480 P.2d 3

**Horton C. WEISS, Petitioner,**

**v.**

**The SUPERIOR COURT OF PIMA COUNTY and the Honorable Robert O. Roylston, Respondent.**

**No. 10215–PR.**

Supreme Court of Arizona,
In Banc.

Jan. 28, 1971.

Rehearing Denied Feb. 25, 1971.

Molloy, Jones, Hannah, Trachta & Coolidge, by John Molloy, Tucson, for petitioner.

Lewis, Roca, Beauchamp & Linton, by John P. Frank, Phoenix, for respondent.

HAYS, Vice Chief Justice.

Petitioner, Horton C. Weiss, a deputy county attorney of Pima County, was the prosecutor in the trial of State v. Atwood. As the result of conduct on the part of pe-titioner during the course of this trial the trial court found petitioner in contempt of court on five different occasions. This matter comes to us on a petition to review the decision of the Court of Appeals. The opinion of the Court of Appeals is vacated. 12 Ariz.App. 527, 472 P.2d 950.

At the conclusion of the Atwood trial the court entered the following judgment and commitment:

"On this 8th day of June, 1970, the Court having found the prosecutor, HORTON C. WEISS, in contempt of this Court for his conduct during the course of the trial of the above defend-ant,

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED, and the JUDGMENT and SENTENCE of the Court is that said HORTON C. WEISS pay a fine of $150.00 and this fine to ap-ply to Count One, and that he be con-fined in the Pima County Jail, at Tuc-son, Arizona, One (1) day on Count Two, two (2) days on Count Three, four (4) days on Count Four and eight (8) days on Count Five; each to be consecu-tive to the prior Count or a total of Fif-teen (15) days, and

IT IS ORDERED that Mr. Weiss re-port to the Pima County Jail on June 9, 1970, at 8:00 a.m.

IT IS FURTHER ORDERED that a certified copy of this JUDGMENT and COMMITMENT shall be sufficient warrant for the Sheriff of Pima County, Arizona to keep and imprison the said HORTON C. WEISS in accordance herewith.

/s/ Robert O. Roylston"
_____
Judge

Petitioner presents three issues: (1) was petitioner entitled to a jury trial on each of the charges of contempt; (2) is the judgment of conviction fatally defective because it does not set forth on its face the facts upon which the convictions are based; and (3) is there sufficient evidence present to support the convictions for di-rect criminal contempt?

We will first consider petitioner's contention that he was entitled to a jury trial on each of the charges of contempt. The United States Supreme Court, in Duncan v. State of Louisiana, 391 U.S. 145, 88 S. Ct. 1444, 20 L.Ed.2d 491 (1968) held that although there exists a fundamental right to a jury trial in serious criminal cases no such right exists in petty offense cases. *Accord*: O'Neill v. Mangum, 103 Ariz. 484, 445 P.2d 843 (1968). In a companion case, Bloom v. State of Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), the Court held that a person is not entitled to a jury trial in criminal contempt cases which fall within the petty offense category but is entitled to a jury trial in criminal contempt cases falling in the category of serious criminal contempts.

In Cheff v. Schnackenberg, 384 U. S. 373, 379, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) it was held that a prosecution for criminal contempt ending in a sentence of six months was a petty offense and hence the petitioner was not entitled to a jury trial. The Court in *Cheff* established the rule "that sentences exceeding six months for criminal contempt may not be imposed by federal courts absent a jury trial or waiver thereof." 86 S.Ct. at p. 1526. Thus, in federal courts the line between serious criminal contempts requiring a jury trial and petty criminal contempts not requiring a jury trial is drawn at six months. We are in agreement with this distinction; we hold that a sentence exceeding six months in jail may not be imposed for criminal contempt in the absence of a jury trial or a waiver thereof. This is in accord with the rationale of our holding in Burrage v. Superior Court, 105 Ariz. 53, 459 P.2d 313 (1969) that counsel must be provided for indigent misdemeanants where the maximum punishment exceeds $500 in fines or six months imprisonment or both.

A related question is whether a reviewing court should look to the punishment authorized or the punishment actually imposed in determining whether an offense is petty or serious. In Duncan v. State of Louisiana, supra, it was held that "the penalty authorized for a particular crime is of major relevance in determining whether it is serious or not and may in itself, if severe enough, subject the trial to the mandates of the Sixth Amendment." 88 S.Ct. at page 1453. *See also* District of Columbia v. Clawans, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937). The court in Bloom v. State of Illinois, supra, interpreted *Cheff* to mean that "when the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense." 88 S.Ct. at page 1487. *See also*: Duncan v. State of Louisiana, 391 U.S. 145, 162 fn. 35, 88 S.Ct. 1444, 1454, 20 L.Ed.2d 491 (1968). This court is in accord with this distinction.

Arizona law does not provide a maximum punishment for convictions for criminal contempt. *See* A.R.S. § 12–864. It is necessary, therefore, to look to the punishment actually imposed to determine whether the offense for which petitioner was convicted should be treated as a petty offense or a serious offense. In the instant case, petitioner was sentenced to a total of fifteen days on four counts of contempt. The individual sentence for each of these four contempts was one day on count two, two days on count three, four days on count four, and eight days on count five. Since the sentence in each of the four counts was for less than six months the offenses are petty offenses and petitioner was not entitled to a jury trial on any of the counts.

Petitioner's next contention is that the judgment of contempt in the instant case is fatally defective because it fails to set forth on its face the facts upon which the convictions for criminal contempt are grounded. Petitioner relies upon In re Pugh, 30 Ariz. 129, 245 P. 273 (1926) and Golden v. Superior Court of Cochise County, 8 Ariz.App. 25, 442 P.2d 562 (1968) to

support his position. This court in *Pugh* after noting that where contempt is committed in the immediate presence of the court that summary punishment may be inflicted, said:

> "[i]t is quite as universally the rule that, if the proceeding is summary, without any written charge, that the record must somewhere show the facts upon which the conviction is based, in order that it can be known that the court had jurisdiction." 30 Ariz. at 132, 245 P. at p. 274.

Subsequently, the Court of Appeals in *Golden* interpreted *Pugh* to mean that the judgment of contempt must show the facts upon which the conviction for contempt is based and that a judgment which fails to contain such facts cannot "be supported by matters extraneous to the judgment itself, such as the transcript of the trial proceedings." 8 Ariz.App. at page 26, 442 P.2d at page 563.

■ It is the opinion of this court that the scope and application of a rule should be governed by the reasons which support the existence of the rule itself. The reason for the existence of the rule announced in *Pugh* is to insure that reviewing courts have sufficient facts before them so that they may intelligently decide whether the lower court had jurisdiction to enter a finding of contempt and whether the acts charged come within the legal definition of contempt. *See* In re Pugh, 30 Ariz. at page 133, 245 P. 273. Although we are of the opinion that the better practice is to set forth the facts constituting contempt in the judgment itself, we do not believe a judgment which omits these facts is fatally defective *if* a transcript or other record of the proceedings is available from which these facts may be obtained. If such a record is not available, then a judgment which fails to set forth on its face the facts upon which the conviction of contempt was based is fatally defective. If such a record is available then the reason for the rule in *Pugh* is satisfied; therefore, the rule itself should be satisfied. In the instant case a transcript of the proceedings is available which contains the facts upon which the contempt convictions were based. The judgment of contempt in the instant case is not fatally defective.

■ Petitioner's final contention is that the evidence does not support four of the five convictions for direct criminal contempt. Petitioner concedes that the conduct upon which count one is based was contemptuous. In In re Pugh, supra, we said quoting from Otis v. Superior Court, 148 Cal. 129, 82 P. 853 (1905), that "[e]very court is the exclusive judge of its own contempts, and its judgment is subject to review only upon the point of jurisdiction." 30 Ariz. at pages 132–133, 245 P. at page 274. We also noted, citing *Otis* that the recital of the acts upon which the contempt is based must show that it was "committed in the presence of the court by the party charged, and the acts must come within the legal definition of a contempt." 30 Ariz. at page 133, 245 P. at page 274. We have previously held that jurisdiction consists of three kinds, "(a) of the subject matter, (b) of the person, and (c) to render the particular judgment which was given." Wall v. Superior Court, 53 Ariz. 344, 89 P.2d 624 (1939). The Supreme Court of Colorado, in Wall v. District Court of Tenth Judicial District, 146 Colo. 74, 360 P.2d 452 (1961) held that it would inquire into whether the lower court had jurisdiction of the parties and of the offense charged but would not act as a trier of the facts. It quoted the following language from Fort v. Co-Operative Farmers' Exchange, 81 Colo. 431, 256 P. 319, 323 (1927), with which we agree:

> " * * * no case in this court has ever held that, in reviewing contempt judgments, we act as trier of facts to ascertain the sufficiency of evidence to support a contempt charge. Where the trial court has jurisdiction, and regularly pursues its authority, and there is evidence of contempt, its decision on the facts is conclusive. * * *" 360 P.2d at page 455.

It is not the function of this court nor is this court equipped to act as a trier of fact. Contemptuous conduct is often a matter of voice inflection, facial expression or some other conduct which is difficult if not impossible for the record to reflect. It is for this reason that we said in *Pugh* that "[e]very court is the exclusive judge of its own contempts. * * *"

In Ong Hing v. Thurston, 101 Ariz. 92, 416 P.2d 416 (1966) we defined contempt as "[a]ny act which is calculated to hinder, obstruct or embarrass a court in the administration of justice, or which lessens the dignity or authority of a court. * * *" 101 Ariz. at page 98, 416 P.2d at page 422. A careful review of the record in the instant case reveals that there is evidence to support the judge's conclusion that direct contempt was committed on each of the four occasions in question.

The decision of the Court of Appeals is vacated and the petition for special action relief is denied.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD, and CAMERON, JJ., concur.

### Supplemental Opinion

HAYS, Vice Chief Justice.

The United States Supreme Court in Mayberry v. Pennsylvania, 400 U.S. ——, 91 S.Ct. 499, 27 L.Ed.2d 532 (January 20, 1971) said:

"Instant treatment of contempt where lawyers are involved may greatly prejudice their clients but it may be the only wise course where others are involved. Moreover, we do not say that the more vicious the attack on the judge the less qualified he is to act. A judge cannot be driven out of a case. Where, however, he does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemingly conduct have left personal stings to ask a fellow judge to take his place." 91 S.Ct. at page 504.

* * * * * *

"It is of course not every attack on a judge that disqualifies him from sitting. In Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, we ruled that a lawyer's challenge, though 'disruptive, recalcitrant, and disagreeable commentary,' was still not 'an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification.'" 91 S.Ct. at page 505.

The Court in *Mayberry* also noted that the trial judge "could, with propriety, have instantly acted, holding petitioner in contempt, or excluding him from the courtroom, or otherwise insulating his vulgarity from the courtroom." 91 S.Ct. at page 504. In the instant case, the trial judge acted immediately in holding petitioner in contempt deferring only the sentencing until the conclusion of the trial. Thus, under *Mayberry* the trial judge in the instant case was not required to "ask a fellow judge to take his place." Furthermore, the facts of this case do not place it in that category of conduct which under *Mayberry* requires a "trial before a judge other than the one reviled by the contemnor." 91 S.Ct. at page 505.

Motion for rehearing denied.

STRUCKMEYER, C. J., and UDALL, LOCKWOOD and CAMERON, JJ., concur.