**Horton C. WEISS, Petitioner,**

v.

**Waldon V. BURR, Sheriff of Pima County, Respondent.**

**No. Civ. 71–171 PHX–CAM.**

United States District Court,
D. Arizona.

May 11, 1971.

---

Molloy, Jones, Hannah, Trachta & Coolidge, P. C., Tucson, Ariz., for petitioner.

Gary K. Nelson, Atty. Gen., by John P. Frank, Special Asst. Atty. Gen., Phoenix, Ariz., for respondent.

## OPINION and ORDER

MUECKE, District Judge.

Petition for Habeas Corpus having been filed on March 15, 1971 and response duly filed, this Court granted a hearing on March 17, 1971 indicating to the parties, both informally prior to said hearing and at the time of hearing in open court, that the parties could use the three hours set aside for hearing to present evidence, both oral and documentary. Petitioner did present certain documentary evidence, both parties declined to present oral testimony, legal argument was heard, and the matter was taken under advisement.

On March 22, 1971, petitioner filed a Petition to Reopen Evidence Naming as his specific objectives, to "establish the exact transcripts that were before the Supreme Court" and to establish certain "formal matters."

On March 30, 1971, this Court, by letter to the parties, suggested that the further evidence might be obtained from state court records and submitted without further hearing, but if there were material evidence that could not be obtained in this manner, the Court would set a time for further hearing provided that the Court and opposing counsel were notified of the evidentiary facts petitioner intended to prove and the means by which he intended to prove them.

Petitioner then filed an "Offer of Proof" on April 6, 1971 and by letter of April 7, 1971, requested that opposing counsel stipulate that petitioner would testify as to the facts set forth in said offer and that the due process question was raised in the Arizona State Court. By letter of April 8, 1971, respondent did so stipulate. Copies of both letters were filed with this Court and are hereby made a part of the formal record in this case.

On April 13, 1971, petitioner requested that certain additional exhibits be admitted into evidence.

Respondent by informal stipulation agreed that they might be admitted, without agreeing the exhibits are relevant.

The record before this Court now includes all of those documents received into evidence at the March 17, 1971 hearing, all of those matters contained in petitioner's "Offer of Proof" and stipulated to by respondent and the further exhibits 13 through 15 enclosed in petitioner's letter of April 13, 1971.

■ Petitioner having failed to notify this Court of any disputed material facts which he intends to prove at an additional evidentiary hearing, and the Petition to Reopen Evidence having been, in effect, partially granted in that this Court has received documentary evidence and stipulated testimony into the record after the March 17, 1971 hearing, the motion is hereby denied insofar as it requests a further evidentiary hearing, and this matter is now submitted to this Court for decision.

This Court having studied the petition, the memoranda, documents, and stipulated evidence finds:

1. State remedies have been exhausted.

2. The petitioner has not shown a violation of the laws or the Constitution of the United States.

The evidence shows that petitioner, while acting as deputy county attorney of Pima County, Arizona, was the prosecutor in the trial of State v. Atwood. During the cause of this trial, the trial court found petitioner in contempt on five different occasions. At the conclusion of the Atwood trial, the trial judge entered judgment of contempt and sentenced petitioner to pay a fine of $150 and fifteen days in jail.

█ Petitioner's allegations and argument can in large measure be summarized as a claim of innocence of the charge of contempt. Petitioner having been adjudged guilty and this judgment having been upheld by the highest state court (Weiss v. Superior Court of Pima Co., 106 Ariz. 577, 480 P.2d 3, Jan. 28, 1971); this Court has no jurisdiction to act as a court of appeals to weigh guilt.

However, the petitioner does rightfully call upon federal habeas corpus jurisdiction to determine certain narrower constitutional questions.

Petitioner concedes that a proper use of summary contempt power justifies the denial of some due process rights. His constitutional attack here is of two kinds. First, he alleges that there were denials of due process which go beyond what can be justified by the objectives of summary contempt power. Second, he alleges that his conduct was protected speech rather than contempt and therefore all limitations imposed upon due process were constitutional error.

## 1. DID THE LIMITATIONS UPON DUE PROCESS GO BEYOND THAT WHICH CAN BE JUSTIFIED BY USE OF SUMMARY CONTEMPT POWER?

█ Petitioner concedes that a proper use of summary contempt power would justify the denial of some due process rights. He attacks the procedures here in that although the judge found contempt "instantly" during the course of a trial, sentence was not ordered until the end of the trial; there was no justification for sentence by the same "biased" judge who was offended; that there was no justification for failure to specify the exact nature of the charges. Petitioner claims that the state has not met the standards of In Re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1947) and Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532, Jan. 20, 1971 in that the contempt, although adjudged "instantly," petitioner was not sentenced until the end of the trial.

The instant punishment contention is disposed of in Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952) holding that summary contempt power could be exercised even where summary punishment awaited the conclusion of the trial. Mayberry, although finding that the trial court should have acted "instantly" to control a criminal defendant's contempt, clearly distinguished the considerations to be weighed in delaying summary contempt to the end of trial where a lawyer is concerned. Mayberry upheld the Sacher rationale, thus:

"The Court noted in Sacher v. United States, 343 U.S. 1, 10, 72 S.Ct. 451, 455, 96 L.Ed. 717, that, while instant action may be taken against a lawyer who is guilty of contempt, to pronounce him guilty of contempt is "not unlikely to prejudice his client." Those considerations are not pertinent here where petitioner undertook to represent himself. *In Sacher* the trial judge waited until the end of the trial to impose punishment for contempt, the Court saying:

'If we were to hold that summary punishment can be imposed only instantly upon the event, it would be an incentive to pronounce, while smarting under the irritation of the contemptuous act, what should be a well-considered judgment. We think it less likely that unfair condemna-

tion of counsel will occur if the more deliberate course be permitted.'

Generalizations are difficult. Instant treatment of contempt where lawyers are involved may greatly prejudice their clients but it may be the only wise course where others are involved." 91 S.Ct. at 504.

Thus, it is unnecessary to determine whether in fact the court did act "instantly" within the meaning of *Oliver* and *Mayberry* in contemporaneously finding contempt while leaving the formal judgment and punishment to the end of the trial since the Court more than met the test of *Sacher* as preserved by *Mayberry*.

Petitioner relies on *Mayberry* to support his contention that due process was violated in that he was denied an unbiased judge. His reliance is misplaced. *Mayberry* holds that a judge who has been addressed with "fighting words" such as "dirty tyrannical old dog" and "dirty sonofabitch" should not give himself the opportunity to give vent to personal spleen in a judgment of contempt at the end of a trial. *Mayberry* distinguished the kind of case at issue here:

> "It is of course not every attack on a judge that disqualifies him from sitting. Ungar v. Sarafite, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, we ruled that a lawyer's challenge, though 'disruptive, recalcitrant, and disagreeable commentary,' was still not 'an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification.'" 91 S.Ct. at 505.

██ Petitioner argues that the objectives of summary contempt would not be handicapped if notice of the specific charges were required in a contempt judgment at the end of trial. Petitioner was able to convince the Arizona Court of Appeals [Weiss v. Superior Court of Pima County, 12 Ariz.App. 527, 472 P.2d 950 (1970)] that a failure to state the charges with specificity was grounds for reversal under state law. The Arizona Supreme Court disagreed finding that the transcript of the trial provided the means by which the facts constituting contempt could be obtained.

We concur. While there is no doubt that specific charges would be more desirable, yet saying this does not make this desirability a constitutional standard under the facts of this case. Here the court-disturbing conduct occurred in the court's immediate presence, and the judge had personal knowledge of it by his own observation of the contemptuous conduct and the finding of contempt in each case was immediate and obviously related to that which preceded it as revealed by the transcript of the trial. Petitioner from the first finding of contempt was given notice that the court had found his conduct contemptuous and was so informed upon each successive act.

As was said in In Re Oliver, 333 U.S. at 274, 275, 68 S.Ct. at 508, 509:

> " * * * courts have long exercised a power summarily to punish certain conduct committed in open court without notice, testimony and hearing."

The Court added, however:

> "The narrow exceptions to these due process requirements include only charges of misconduct, in open court, in the presence of the judge, which disturb the court's business, where all of the essential elements of the misconduct are under the eye of the court, are actually observed by the court * * * If some essential elements of the offense are not personally observed by the judge, so that he must depend upon statements made by others for his knowledge about these essential elements, due process requires * * * that the accused be accorded notice and a fair hearing * * *."

Following this view of the U. S. Supreme Court, the facts of the present case here considered are such that specific charges of contempt are not required. Petitioner has not cited any authority to the contrary (again as applied to the facts of this case) nor does this Court know of any.

# 1310

## 2. IS THIS A PROPER CASE FOR SUMMARY CONTEMPT POWER?

Petitioner alleges that his conduct was not an open threat to the orderly administration of justice; that the Arizona courts improperly relied on summary contempt power to punish mere zealous advocacy, thereby violating petitioner's right to free speech and to full due process, including a right to specific notice, an unbiased judge, full hearing, and jury trial.

■ With respect to petitioner's demand for specific charges, notice, a full hearing, and a jury trial;* what has been said previously amply disposes of these issues.

■ There remains only the issue of whether or not petitioner's conduct was such as to violate accepted standards for judging whether or not his conduct was contemptuous and if contemptuous, whether or not the court could deal with such conduct summarily without violating a free speech right of petitioner as an advocate.

Petitioner relies heavily on In Re Oliver to the effect that a court's power to punish for contempt summarily and without many of the usual due process safeguards may only be exercised where the conduct creates "an open threat to the orderly procedure of the court and such a flagrant defiance of the person and presence of the judge before the public that, if not instantly suppressed and punished, demoralization of the court's authority will follow." 335 U.S. at 275, 68 S.Ct. at 508.

It is petitioner's contention in short that his conduct does not meet the "open threat" standard of *Oliver*. Petitioner asks this Court to find in effect that the trial judge made certain factual errors in interpreting petitioner's conduct as sarcasm and disobedience when in fact in

each count of contempt, petitioner's motivation was innocent.

This Court, in reviewing each count, finds that the facts of petitioner's conduct as viewed from the whole record before this Court, leads to a reasonable inference that petitioner's conduct was within that "prejudicial and excessive zeal of prosecutors" which *Sacher*, 343 U.S. at 8, 72 S.Ct. at 455, urged the bench to curb. Thus, this Court can not agree that petitioner's interpretation of the facts of this case is the only reasonable interpretation, and therefore cannot agree that his interpretation must be accepted as a matter of law.

a. Petitioner argues that possible, contemptuous remarks in Count One were in fact directed at opposing counsel. We find that the trial judge could reasonably believe it was applied to him. (Petitioner's Exhibit 3, p. 206, L. 13 to p. 22, L. 26).

b. Petitioner argues that his refusal to "do that" in Count 2 in fact was a refusal to obey a "suggestion" rather than the refusal to obey an earlier order. Reading further back in the transcript than petitioner suggests, this Court finds the latter inference is a more reasonable one. (Petitioner's Exhibit 3, p. 27, L. 15 to p. 30, L. 26).

c. Petitioner argues that his statement in Count 3 that " * * * he did not know whether she had been in the judge's chambers," was not meant to suggest any impropriety. This Court finds that the trial judge could reasonably have found the remarks offensive. (Petitioner's Exhibit 3, p. 30, L. 7 to p. 35, L. 19).

d. Petitioner suggests that in Count 4 in bringing something into the record that had been stricken, he believed in "good faith" that the "door had been opened." From the context of the entire record, this Court finds the trial judge had reason to interpret petitioner's con-

---

\* As to a jury trial, as an additional ground for rejecting this demand, we adopt the reasoning of the Arizona Supreme Court in Weiss v. Superior Court, wherein that court pointed out that the short sentences imposed for contempt constitute petty offenses for which petitioner is not entitled to a jury trial.

duct as disobedience. (Petitioner's Exhibit 3, p. 35, L. 22 to p. 37, L. 4).

e. Petitioner argues that the trial judge in finding petitioner failed to obey an order not to argue "premeditation" was mistaken since petitioner in fact was arguing "malice aforethought." The trial court's inference was not unreasonable. (Petitioner's Exhibit 4, p. 75, L. 4 to p. 88, L. 24).

After thus determining conflicting reasonable inferences from the evidence in favor of factual findings to support the judgment, we find that the trial judge acted to preserve judicial order rather than to curb innocent advocacy.

Nonetheless, we are still left with the question of whether the state courts, in attempting to balance the interests of orderly administration of justice as against petitioner's freedom of advocacy and right to due process, tipped the scale with an unconstitutionally heavy hand in favor of judicial order.

Petitioner cites the state standard:

"(Any) act which is calculated to hinder, obstruct or embarrass a court in the administration of justice, or which lessens the dignity or authority of a court * * *" (p. 2 of petitioner's memorandum citing p. 7 of Supreme Court of Arizona opinion)

as a less exacting standard for waiver of due process, than the standard used in *Oliver*. A review of the cases does not support petitioner's contention that the *Oliver* definition of contempt prescribes a uniformly accepted constitutional standard enforceable against the states. For example, the definition in *Oliver* is somewhat differently expressed in the rationale in *Sacher*:

"The nature of the proceedings presupposes, or at least stimulates, zeal in the opposing lawyers. But their strife can pervert as well as aid the judicial process unless it is supervised and controlled by a neutral judge representing the overriding social interest in impartial justice and with power to curb both adversaries. The rights and immunities of accused persons would be exposed to serious and obvious abuse if the trial bench did not possess and frequently exert power to curb prejudicial and excessive zeal of prosecutors. The interests of society in the preservation of courtroom control by the judges are no more to be frustrated through unchecked improprieties by defenders.

Of course, it is the right of counsel for every litigant to press his claim, even if it appears farfetched and untenable, to obtain the court's considered ruling. Full enjoyment of that right, with due allowance for the heat of controversy, will be protected by appellate courts when infringed by trial courts. But if the ruling is adverse, it is not counsel's right to resist it or to insult the judge—his right is only respectfully to preserve his point for appeal. During a trial, lawyers must speak, each in his own time and within his allowed time, and with relevance and moderation." 343 U.S. at 8–9. 72 S.Ct. at 455.

This Court recognizes that an overly broad summary contempt standard could have a chilling effect on advocacy, could lead to undue usurpation of due process, and in an extreme case could constitute tyranny. On the other hand, an unduly restrictive standard for summary contempt could take away from the trial judge, a tool needed to promote the orderly judicial process and could in an extreme case encourage anarchy with a consequent destruction of law and order.

This Court finds that the standard set by the Arizona Supreme Court to judge contemptuous conduct is not constitutionally impermissible under present federal authorities.

Therefore, it is ordered the petition is denied.