403 P.2d 550

**STATE of Arizona, Appellee,**

**v.**

**Chester Lee WALLACE, Appellant.**

**No. 1406.**

Supreme Court of Arizona.

En Banc.

June 23, 1965.

Rehearing Denied July 13, 1965.

Darrell F. Smith, Atty. Gen., Stirley Newell, formerly Asst. Atty. Gen., for appellee.

H. B. Daniels, Phoenix, for appellant.

UDALL, Justice.

The defendant, Chester Lee Wallace, was charged with the second degree murder of one Cody Hartzog on February 24, 1963.

The trial of defendant began on May 2, 1963, and at its conclusion the defendant was found guilty as charged. He was sentenced to serve not less than 35 nor more than 40 years in the state prison at Florence, Arizona. He now appeals.

Defendant came to the Moses Coury Junk Yard in Chandler, Arizona on or about the 19th of February 1963 and transacted some business with a Mr. Jesse Coury, an employee of the yard. In the business exchange the defendant purchased a small truck from the yard but before delivery could be made it was necessary to take care of certain legal details pertaining to the sale. Coury, the employee, permitted defendant and his wife to stay in a trailer located at the yard until the following Monday, and they would watch the place in the evenings.

Coury also testified that the deceased came to the yard to look at an old truck on Saturday the 23rd of February, and he was advised to return the next day around noon. The defendant was a short distance away from the deceased when Coury invited him to return the next day. This testimony was verified by one James Hollinger.

On Sunday morning, the 24th, deceased and one Charles Grieves came to the Moses Coury Junk Yard and were in the process of looking at a truck transmission and some hydraulic jacks when defendant appeared and asked them what they were doing. The deceased explained they had the permission of Coury to be in the yard, to which defendant answered that he did not want anyone there. According to the testimony of Grieves, as the deceased and he were in the act of leaving, defendant continued to express his disapproval of their presence in the yard, at which time he (Grieves) told defendant he didn't like the insinuation that he was a thief. At this time the defendant reached into his back pocket and pulled out a gun, whereupon Grieves is alleged to have said: "Let's go", and the deceased said, "Yes, man!" Grieves testified they proceeded at that time to walk away. He also testified that "Cody (the deceased) was in close proximity to the defendant" and that as "we proceeded to turn and I heard this bang, turned around and looked and I seen Cody spin and fall." Grieves also testified that at no time did he nor the deceased strike the defendant and that both he and the deceased had turned together to leave and not more than a second elapsed before the gun went off. The bullet fired by the defendant struck the deceased about one and a quarter inches above the left ear and there was also a laceration about ¾ of an inch behind the bullet wound. The deceased died immediately after being shot.

Patrolman Donald Hudson arrived on the scene very shortly thereafter. At that time defendant told him the deceased had swung at him and that defendant pulled his pistol to use it as a club or to fight him off. The

defendant's wife, hereinafter referred to Mrs. Wallace, stated that she saw the deceased assault the defendant prior to the time defendant endeavored to hit the deceased on top of the head with his pistol when it went off. Mrs. Wallace also testified she saw the deceased hit defendant with his right hand.

Defendant first assigns as error the fact that he was deprived of his constitutional rights during the progress of the trial and that he was not accorded a fair and impartial trial. He contends the court erred in not granting defendant a continuance on or before the date the trial began. It was contended that a continuance was necessary for counsel to prepare the defense and also to procure the attendance of a material witness.

The record shows that counsel for the defendant was informed of the date of trial 45 days prior to the hearing on his motion for a continuance. To substantiate his position that a continuance was necessary, counsel for the defense produced correspondence from Mrs. Wallace, who was the material witness, asserting that she was sick and waiting for transportation expenses. This letter was received by counsel for the defendant two weeks prior to the date set for trial. We are of the opinion that there was a lack of due diligence on the part of counsel since he failed to have a subpoena timely issued for the witness. See, A.R.S. § 13–1821 (1956). However, the fact remains that Mrs. Wallace, the witness in question, was present at the trial and testified.

The disposition of a request for a continuance is a matter that is left to the sound discretion of the trial judge. State v. Coey, 82 Ariz. 133, 309 P.2d 260 (1957); See Criminal Rules 241, et seq., 17 A.R.S. We find no facts in the record to support the contention that the court abused its discretion in not granting defendant a continuance.

Secondly, the defendant claims that he was deprived of a fair and impartial trial because the trial court refused to allow defense counsel wide latitude in the cross-examination of the state's witness, Grieves. Counsel submitted a few questions and answers that were propounded by defense counsel to Grieves, which, he says, illustrate the court was unnecessarily limiting him in his cross-examination:

"Q (By Mr. Daniels for appellant) How many steps, if you know, were taken by you from the time that you saw the gun and the time that you turned to walk to leave and the gun was discharged?

"A About—not over two.

"Q Now, which is correct, one or two? Or was it more?

"A I'd say between; like I said one, I took one step.

"Q In other words, you are changing your testimony, is that right?

"A No, sir; I am not changing my testimony, I am telling it as closely as I can to actually what happened, how many steps were taken, at the time I probably said one or two; it couldn't have been over that.

"Q Are you changing your testimony now?

Mr. Shaw (Prosecutor) objected: "This is argumentative now."
The court sustained the objection.

It is apparent that the court rightly sustained the objection of the prosecutor that the questions were argumentative. See Udall on Evidence, section 43, p. 58.

Counsel also complains that the following questions and answers propounded by the prosecutor to Mrs. Wallace indicate the court's bias in favor of the state:

"Q (By the prosecutor) Did he strike him and Mr. Grieves turn, or did he strike him and kick him and then Mr. Grieves struck him, which?

"A He turned when he hit my husband and right after that he kicked him, that's when my husband hit him on top of the head.

"Q "Well, let me be sure I understand.

"MR. DANIELS: Your Honor, I submit, I think he's pressing it too much, she's answered three different times, if he's trying to get her to change the testimony I don't think he can do it that way.

"THE COURT: The jury is entitled to understand the situation."

■ It is clear from this testimony that the prosecutor had a right to examine the witness on what she meant by her statements which concerned her version of the acts committed by her husband and the deceased. See McCormick on Evidence, chapter 4, page 40; Udall on Evidence, section 45, page 65.

■ The defendant next contends that the unfairness of the entire proceedings is illustrated by the severity of the punishment imposed by the court, and he alleges openly that because of defendant's race he is not being given the same fair consideration that would be meted out to him were he a white man. This contention is entirely without merit since the record shows that the defendant was convicted in 1940 for forgery and was sentenced to two years. In 1942 he was sentenced for a term of three years for counterfeiting, and in 1949 the defendant was sentenced for a term of six to seven years for robbery.

■ It has been repeatedly held that the trial judge, in imposing sentence, should consider not only the circumstances of the offense for which the defendant has been

found guilty but also may consider the moral character and past conduct of the defendant in determining the punishment that should be meted out. State v. Quintana, 92 Ariz. 308, 376 P.2d 773 (1962); State v. Fenton, 86 Ariz. 111, 341 P.2d 237 (1959).

Where the penalty upon conviction of the crime is within the limitations of the statute and is entirely within the sound discretion of the trial judge, this Court will not disturb the ruling of the trial court unless it clearly appears that the sentence imposed is so excessive that it results in an abuse of discretion. State v. Cuzick, 97 Ariz. 130, 397 P.2d 629 (1965); State v. Quintana, supra; State v. Moody, 67 Ariz. 74, 190 P.2d 920 (1948).

In the present case the defendant has been found guilty of second degree murder. This was the fourth felony conviction of the defendant, which included a prior conviction for robbery. We cannot say that under the circumstances the court abused its discretion. State v. Cuzick, supra.

Defendant next claims that the verdict is contrary to the evidence and the law. The defendant says the state failed completely to prove that the homicide was committed with malice aforethought, which is a prerequisite to a second degree murder conviction. Defendant claimed the deceased refused to leave the premises and used profane language and swung at him with

his fist before he drew the pistol and attempted to club or fight him off, and he asserts that the gun was used not to shoot the victim but to prevent him from committing an aggravated assault on defendant and disturbing the peace. He seeks to show that there was no malice by recalling what he said to Patrolman Hudson when he appeared at the scene of the killing, which defendant says supports his defense made during the trial.

However, defendant in his argument completely ignores the direct examination of Grieves, the companion of deceased. The testimony of the latter is squarely in conflict with defendant's contention. He stated that at no time did he nor the deceased strike the defendant and that they were turning to walk away when defendant fired the gun. In refutation of Mrs. Wallace's testimony that the deceased hit the defendant with his right hand just before the shot was fired, Grieves testified that deceased had a cigarette in his right hand when the shooting took place and that after the deceased fell to the ground the cigarette was lying by his hand on the ground. In the absence of genuine provocation, malice may be implied. A.R.S. § 13–451 (1956). See also Moore v. State, 65 Ariz. 70, 174 P.2d 282 (1946). It is the law in Arizona that malice may be inferred from the intentional use of a deadly weapon. State v. Mathis, 92 Ariz. 194, 375

P.2d 388 (1962); State v. Preis, 89 Ariz. 336, 362 P.2d 660 (1961).

The record in this case clearly shows that the disputed evidence was properly presented to the jury for their determination under proper instructions and therefore the verdict of the jury will not be disturbed. See State v. Rivera, 94 Ariz. 45, 381 P.2d 584 (1963).

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and BERNSTEIN and McFARLAND, JJ., concurring.