Horton C. **WEISS**, Appellant,

v.

Waldon C. **BURR**, Sheriff of Pima County, Arizona, Appellee.

No. 71–1933.

United States Court of Appeals, Ninth Circuit.

May 21, 1973.

Rehearings Denied Sept. 18, 1973.

974

John F. Molloy (argued) of Robertson, Molloy, Fickett & Jones, P.C., Tucson, Ariz., for appellant.

John P. Frank, Sp. Asst. Atty. Gen., (argued); Gary K. Nelson, Atty. Gen., Phoenix, Ariz. for appellee.

Before ELY and TRASK, Circuit Judges, and SPENCER WILLIAMS, District Judge.[*]

ELY, Circuit Judge:

Weiss appeals from the District Court's denial of his petition for habeas corpus. He contends that the court erred in denying his relief from a jail sentence and a fine levied against him, for criminal contempt, by an Arizona trial court.

During the prosecution of a murder trial, Weiss, the prosecuting attorney, was cited for five separate acts of criminal contempt. The first arose out of an in-court discussion, during the jury's absence, concerning the right of a prosecu-tion witness, the mother of the accused, to claim the privilege against self-incrimination. After an acrimonious ex-change between Weiss and the defense at-torney, the court decided to allow the witness to claim the privilege. There-upon Weiss complained:

"Well, it worked. That is all I can say. Erroneously. If they call this Jus-tice."

The court responded:

"Show it is the finding of the Court that Mr. Weiss is in contempt of Court for remarks made toward the Court reflecting on the discretion and judg-ment of the Court. You don't have to have any respect for me personally, but you are going to respect this bench, Mr. Weiss."

The second citation was sparked by an exchange between Weiss and the court over the use of prior testimony of the same witness. She had previously been separately tried for the same alleged murder, and she had testified in her own defense. At her son's trial, how-ever, she found is physically and emo-tionally difficult, if not impossible, to complete her testimony. As a substi-tute for her continued appearance, the defense counsel urged that the entire transcript of her testimony at the prior trial be read into evidence. Weiss ar-gued that only selected portions should be read. The court, agreeing with the defense, said to Weiss:

"Well, the record may show your ob-jection to those portions preceding where you are indicating that you are wanting to start, and the objection is overruled, and you [and the defend-ant's attorney] will read the transcript just starting with the beginning of her testimony and right straight on to the end, and making any record either of you want.

I would suggest, so it will be a little more understandable to the jury, that one of you read the questions and one the answers."

[*] Honorable Spencer Williams, United States District Judge, San Francisco, California, sitting by designation.

Weiss responded: "No, I am not going to do that." The court then stated:

"Mr. Weiss, you are going to do what I tell you to do when you are in this courtroom. Now I have warned you again and again about that.

Show it is the finding of the Court that Mr. Weiss is again in contempt of Court, and that sentence will be pronounced at the end of the trial."

The third citation also revolved around the court's treatment of the defendant's mother. In response to a defense motion, the court said:

"Show that the defense moves that [the accused's mother] be released as a witness and Mr. Weiss objects on the basis [that] he may need her in his rebuttal.

So show it appearing to the Court that the physical and emotional condition of the witness is such that she is unable to testify, and has been throughout the trial, it is ordered that she be released from the subpoena."

Immediately thereafter, the following colloquy occurred:

"*Weiss:* I would like the record to show [the witness] has appeared in the courtroom only once before the Judge. I don't know whether she has been in the Judge's chambers, but I would like the record to show she appeared in the courtroom one time according to my knowledge.

*The Court:* What do you mean by her being in the Judge's chambers?

*Weiss:* I don't know where she has been, because the Court said it appearing her mental and emotional and physical condition is such that she is unable to testify as a witness. You have to base it on something.

*The Court:* I'm not going to take much more, and you had better quit making those sarcastic remarks. You know she hasn't been in the Judge's chambers. There is no reason for her or any other witness to be in there, and I am not going to take that sarcasm.

Show it is the finding of the Court that Mr. Weiss is found in contempt of Court and sentence will be pronounced at the end of the trial."

The fourth citation was imposed when Weiss revealed to the jury portions of a statement by the defendant which the court had previously ordered suppressed. After the defense counsel asked the court to admonish Weiss for introducing the excluded evidence, the court said:

"No, he is not going to get a chance to [introduce such evidence] again.

It is the finding of the Court that Mr. Weiss is again in contempt for deliberately, among other things, including statements that have been suppressed by the Court, . . . in an obvious attempt to cause a motion for mistrial."

The last citation was based upon statements Weiss made, during his closing argument to the jury, which the court had admonished him not to make. At trial, the state sought a first degree murder conviction against the defendant. Prior to closing arguments, however, the court ruled first degree murder out of the case. Consequently, during an interruption in Weiss' argument, the defense argued that since premeditation was no longer an issue, Weiss should not contend that the defendant had a plan which resulted in the killing. The court, agreeing, orally ordered Weiss not to

"argue premeditation and such as that, because that is what I have ruled as a matter of law is out of the case. So if you argue to the jury the facts with the inference that they can find that this was murder that had been planned by the defendant for many days prior to the incident, why then really you are arguing premediation and first degree murder.

\* \* \* \* \* \*

[Y]ou are of course entitled to argue any of the facts, but just don't argue them to the effect that these were plans made by the defendant for the purpose of murdering his father."

Under the statutes involved, murder was defined as a killing "with malice aforethought."[1] First degree murder involved, in addition, the element of premeditation.[2]

In his argument to the jury, the defense counsel argued that the accused had no malice aforethought and explained his conception of the phrase:

"[M]alice aforethought meant that in your heart at the time you commit an act you do it with malice, maliciously, that in your mind it is a forethought. You thought of it before you did it. And it is incumbent upon the prosecution to establish beyond any reasonable doubt that the defendant in this case, if he is going to ask you to find this defendant guilty of murder, had malice aforethought."

During his closing presentation, Weiss attempted to convince the jury that the defendant had, in the words of the defense counsel, "thought of it before he did it." In doing so, he pointed out the suspicious nature of a number of the defendant's actions and statements prior to the killing. At one point, the following colloquy occurred:

"*Weiss:* All right. Now on Thursday, * * * was there any showing of belligerence on Bill Atwood's [the decedent] part? . . . Not one bit. Then why the statements [by one of the witnesses concerning the purchase of a gun], . . . was there some connection between this statement and purchase of the gun, and going [to see the deceased] there on Saturday? Was it an explanation for having the gun? If he [the deceased] did get this

way [become belligerent], then why try to get with him alone? That is not the correct thing to do.

*Defense:* I will object, if the Court please. This is the very matter the Court has instructed on. This is not in the case.

*The Court:* I have ruled anything concerning premeditation is out of the case. First degree murder is out of the case so don't make this type of argument, Mr. Weiss. . . .

*Weiss:* I am sorry. I thought I could discuss the facts of the case. I am sorry.

I apologize to the Court [for] a misunderstanding on my part."

After Weiss completed his argument, and the jury was instructed and sent out for its deliberations, the judge again addressed Weiss. He said:

"Mr. Weiss, I just explained as fully as I knew how this morning that you were not to go into an argument concerning any scheme or plan or premeditation. Then when you were talking about the [witness'] statement . . . and the fact that it was—what you were getting into was the fact that the statement was obviously made for having purchased the gun with the intent to use it [to kill the deceased] . . . . That was just applying [sic; flying] in the face of what I had told you to do. It is along the same line of what you did yesterday, and I avoided holding you in contempt at that time, but I don't see how I can avoid it at this time.

So show it is the finding of the Court that Mr. Weiss is in contempt

1. Ariz.Rev.Stat. § 13–451 provides:

 "(A) Murder is the unlawful killing of a human being with malice aforethought.

 (B) Malice aforethought may be express or implied. It is express when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature. It is implied when no considerable provocation appears or when the circumstances attending the killing show an abandoned and malignant heart."

2. Ariz.Rev.Stat. § 13–452 provides:

 "A murder which is perpetrated by means of poison or lying in wait, torture or any other kind of wilful, deliberate and premeditated killing, or which is committed in the perpetration of, or attempt to perpetrate, arson, rape, robbery, burglary or mayhem, is murder of the first degree. All other kinds of murder are of the second degree."

and the matter will be dealt with at the close of the trial."

At the end of the trial, the court imposed sentence upon Weiss in a summary proceeding. For the first citation, he was fined $150. For the subsequent infractions, he was given 1, 2, 4, and 8 days in jail, respectively. Before the sentences were executed, Weiss sought review in the Arizona appellate courts. The Arizona Court of Appeals found the contempt judgment void on all counts "[f]or a lack of the requisite factual findings . . . ." Weiss v. Superior Court, 12 Ariz.App. 527, 529, 472 P.2d 950, 952 (1970). The Supreme Court of Arizona reversed. It rejected the views of the Court of Appeals, stating:

> "We do not believe a judgment which omits [requisite] facts is fatally defective *if* a transcript or other record of the proceedings is available from which the facts may be obtained."

Weiss v. Superior Court, 106 Ariz. 577, 580, 480 P.2d 3, 6 (1971) (emphasis in original).[3]

The Supreme Court of Arizona also stated:

> " '[E]very court is the exclusive judge of its own contempts and its judgment is subject to review only on the point of jurisdiction' . . . . It is not the function of this court nor is this court equipped to act as a trier of fact. Contemptuous conduct is often a matter of voice inflection, facial expression or some other conduct which is difficult, if not impossible for the record to reflect . . . ." *Id.* at 580–581, 480 P.2d at 6–7.

The court resolved the jurisdictional issue by deciding that the record revealed ample evidence to support the judge's conclusion that direct contempt was committed on all five occasions. Based on that conclusion, it affirmed the contempt convictions.

Weiss then petitioned for a stay of execution from the United States Supreme Court. When his petition was denied by Mr. Justice Douglas, he filed a petition for habeas corpus in the District Court.[4] The District Court denied relief. It found that Weiss had not shown any violation of rights protected by the Constitution. Specifically, the court found: (1) there was no requirement that sentence be imposed by a judge other than the one who was offended;[5] (2) a more detailed specification of the nature of the charges was not required under Arizona law; (3) it was constitutionally permissible to postpone sentencing Weiss for his offenses until the end of the trial; (4) under the facts, the trial judge acted to preserve judicial order rather than to curb innocent advocacy; and (5) Weiss' conduct, as shown by the record, was within that "prejudicial and excessive zeal" that the Supreme Court has urged judges to curb. Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952).

On this appeal, Weiss advances a two-pronged attack against the decision of the District Court. On one hand, he argues that the convictions must be set aside because the conduct for which he was punished was not contemptuous and punishment therefore would offend both due process and the First Amendment concepts incorporated into the Four-

---

3. A contrary rule as to contempt procedures in Federal Court was recently stated in United States v. Marshall, 451 F.2d 372 (9th Cir. 1971).

4. The propriety of using a petition for habeas corpus to test the constitutionality of his convictions is unquestionable. *See* In re Little, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972) ; Groppi v. Leslie, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632

(1972) ; In re Green, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962).

5. The Arizona Supreme Court found that there was no "personal heat" between Weiss and the trial judge which required adherence to the procedures established in Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). *See* text preceding and accompanying note 15, *infra.*

teenth Amendment.[6] On the other hand, Weiss challenges the adequacy of the procedures which led to the convictions. He contends that those procedures were, in several aspects, inconsistent with the concept of due process, as guaranteed by the Fourteenth Amendment. We agree, in part, with both of Weiss's arguments.

## I.

We find merit in Weiss's contention that constitutional limitations prohibit Arizona from punishing for the conduct involved in the fifth citation. While we have great respect for the sovereignty of the Arizona courts and accord much weight to their decision involving contempt convictions (see Fisher v. Pace, 336 U.S. 155, 69 S.Ct. 425, 93 L.Ed. 569 (1949)), no court has unfettered discretion to punish attorneys for allegedly contemptuous conduct. The due process clause does permit the states to use the summary contempt power to maintain the integrity of their courts, but, at the same time, it places limitations upon the exercise of that power. See In re Little, 404 U.S. 553, 92 S.Ct. 659, 30 L.Ed.2d 708 (1972); Holt v. Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965). A court cannot deprive attorneys of their liberty or property in order to avert perceived threats to the administration of justice if the court's action would unduly impair legitimate, nondisruptive advocacy. In any case wherein the record reveals no facts supporting the challenged contempt conviction, the adjudication cannot stand. See Fisher v. Pace, supra; In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962).

Our review of the record leads us resolutely to the conclusion that at least as to the fifth citation, this is such a case. From the record, it is clear that Weiss's conduct was not overtly contemptuous. The record does not show, and the state does not argue, that the purportedly objectionable remarks made by Weiss during his argument were either spoken in a boisterous or disrespectful tone or the cause of an actual disruption in the trial. Moreover, there is no indication that his argument, per se, imperiled the trial court's administration of justice. The possibility of a first degree murder conviction had been eliminated by the court, and even if Weiss had endeavored to argue premeditation, which he did not, such an argument could not have injuriously affected the trial. Premeditation was irrelevant to the question whether the defendant was guilty of second degree murder or of manslaughter. By arguing as he did, Weiss, at most, attempted to convince the jury of something which could not have affected the defendant adversely when the jury made the critical determination regarding his guilt.

Weiss's conviction on the fifth citation, consequently, is sustainable, if at all, only on the ground that he violated the trial court's order restricting the scope of possible argument. The mere transgression of an order governing trial procedures is, however, almost invariably insufficient to sustain a contempt conviction. Due process requires, we think, something more serious than a minor disagreement, such as may often and understandably follow an attorney's failure strictly to comply with this type of order, before a contempt citation can be issued.[7] See In re McConnell, supra.

6. Weiss now concedes that the conduct covered by the first citation was contemptuous. As we interpret his concession, it goes only to the question of whether his act was punishable, and he still challenges the procedural method that was employed.

7. As a prosecutor, representing the public, Weiss should not necessarily have all the leeway in presenting his cases that the

Sixth Amendment, as applied through the Fourteenth, guarantees to defense attorneys in state prosecutions. See, e. g., Holt v. Virginia, 381 U.S. 131, 85 S.Ct. 1375, 14 L.Ed.2d 290 (1965); cf. In re Little, supra. "Although the prosecutor operates within the adversary system, it is fundamental that his obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the accused

In general, the misconduct must entail a persistent disregard for the court's authority that the attorney could have avoided through a reasonable, good faith effort. Fisher v. Pace, *supra;* In re McConnell, *supra.* There is nothing before us which indicates that, under this test, Weiss's conduct during his closing argument was impermissible.

It is often difficult for an attorney to strike an effective accommodation between his client's interests and his obligations to meet the demands of the judge before whom he must argue his case. Consequently, when, in attempting to reach an appropriate compromise, one transgresses a court order, he is not necessarily guilty of contempt. In re McConnell, *supra.*

█ Under the trial court's ruling, Weiss was faced with the problem of answering the defense counsel's argument that there was no malice aforethought [8] without arguing the issue of premeditation.[9] He did not use the word "premeditation," but he did attempt to recall, to the minds of the jurors, things that

the defendant did and said which tended to show that he "thought before he did it." In advancing that argument, everything Weiss said constituted a legitimate response to the summation argument of the defense.[10] In addition, the record does not suggest that Weiss's alleged violations were so blatant or so frequent as to indicate the absence of a good faith attempt to comply with the court's ruling. If his argument was, in addition to being pertinent, also contemptuous, we cannot see how Weiss could have been expected successfully to comply with the court's order while acting as the state's advocate. There was no disinterested witness to the killing. If the defendant's malice were to be proved at all, the proof, of necessity, depended upon inferences drawn from the events which led to the killing. Despite the court's two warnings to Weiss, his words did not warrant eight days in jail. The contempt adjudication relating to the fifth citation is therefore set aside.

█ █ As to the other four citations,[11] we can perceive, on the record before us,[12] no substantive, as distin-

---

as well as to enforce the rights of the public." ABA Standards Relating to the Prosecution Function and the Defense Function 44 (1970). His duty "is to seek justice, not merely to convict." *Id.* at 43. Nevertheless, the prosecutor is still protected, by the Federal Constitution, from arbitrary punishment predicated upon his conduct as an advocate.

8. *See* note 1, *supra.*

9. Logically, it would seem that whenever a murder is premeditated, the murderer acts with malice aforethought. If so, Weiss's dilemma was even more difficult than it appears at first glance, for, in that situation, the judge's limitation on his argument served to foreclose a large area of legitimate discussion based on the theory that the evidence showed sufficient premeditation to support a finding of malice aforethought.

10. A review of the defendant's words and acts suggests that Weiss may have been attempting to show that the defendant's conduct evidenced an "abandoned and malignant heart" [Ariz.Rev.Stat. § 13–451, subsec. B] or that the use of the gun was "intention," in which case, under Arizona

law, malice may be presumed. *See* State v. Wallace, 98 Ariz. 243, 403 P.2d 550 (1965). In either case, the argument to which the trial judge objected seems to us to have been a proper response to the defense.

We do not, of course, sit to overrule the Arizona courts' interpretation of their own law. In this case, however, only the trial court decided that Weiss's argument was improper. If that ruling were incorrect, then the nature of Weiss's apparent misconduct is, to some extent, ameliorated. *See* Fisher v. Pace, *supra* (Douglas, J., dissenting).

11. Because of the unique problem, discussed below, regarding the fourth citation, we have determined the adequacy of the evidence by evaluating only so much of Weiss's conduct as is clearly set forth, and identified, in the record.

12. In light of the procedural deficiencies, discussed below, we must remand this case to the District Court to allow Arizona an opportunity to conduct further proceedings. Hence, we do not conclusively decide whether the evidence concerning the other citations is sufficient. It may be that when the additional proceedings are

guished from procedural, reason of constitutional dimension, which would require us to reverse Weiss's convictions.[13] We agree with the District Court that the conduct upon which these citations were based evidenced that type of "prejudicial and excessive zeal" which cannot be tolerated. In our view, Weiss's conduct, although not actually disruptive, posed significant, imminent threats to the fair administration of justice by the trial court. *See generally* Fisher v. Pace, *supra*; United States v. Schiffer, 351 F.2d 91, 94 (6th Cir. 1965), cert. denied, 348 U.S. 1003, 86 S.Ct. 1914, 16 L.Ed.2d 1017 (1966). Weiss's unnecessary insults and his gross failure to comply with the trial judge's rulings transcended the level of minor procedural disputes and minor offenses to the judge's sensibilities. They constituted punishable contempts.[14]

## II.

 Weiss challenges the procedures followed by the Arizona courts on several grounds. First, he charges that he was denied due process when the same judge who had issued the contempt citations ultimately sentenced Weiss at the end of the trial. There is no merit to this argument. In Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.

Ed.2d 532 (1971), the Supreme Court definitely articulated the test for determining whether the judge who issues the contempt citations is constitutionally required to seek another judge to conduct a hearing on the charged misconduct. The Court wrote:

> "A judge cannot be driven out of a case. Where, however, he does not act the instant contempt is committed, but waits until the end of the trial, on balance, it is generally wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place.

> \* \* \* \* \* \*

> It is, of course, not every attack on a judge that disqualified him from sitting. . . . [A] lawyer's challenge, though 'disruptive, recalcitrant and disagreeable commentary' [need not be] 'an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification.' " (Citation omitted.)

400 U.S. at 463–464, 465–466, 91 S.Ct. at 504–505 (1971). From this language, it is clear that another judge need not have been chosen to sentence Weiss. The trial judge acted immediately after each alleged contempt,[15] and further, Weiss's

completed, either the state courts or, if the dispute is pressed, the federal courts will discover a deficiency which is not now apparent.

13. It is unclear whether, under Rule 42(a), Fed.R.Crim.P., any of Weiss's acts could be considered contemptuous. *See, e. g.*, In re Dellinger, 461 F.2d 389 (7th Cir. 1972); United States v. Meyer, 149 U.S. App.D.C. 212, 462 F.2d 827 (1972); In re Hirschkop, 346 F.Supp. 973 (D.D.C. July 28, 1972). The federal rule does not, however, reflect the constitutional limits of the states' contempt powers, except where a criminal defendant's Sixth Amendment rights are concerned. *But see* In re McConnell, 370 U.S. 230, 82 S.Ct. 1288, 8 L.Ed.2d 434 (1962). *See also* Groppi v. Leslie, *supra*. In *Groppi*, the Supreme Court interchangeably cited cases interpreting Rule 42 and cases involving the constitutional limits of the contempt power.

14. Weiss may be correct in his contention that the definition for contempt relied upon by the Arizona Supreme Court (*see* 106 Ariz. 577, 480 P.2d at 7) is inconsistent with the standard formulated by the Supreme Court of the United States. *See, e. g.*, In re Little, *supra*; Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888). We need not reach that question, however, at this time.

15. The fact that the trial judge waited until the end of the trial to pronounce Weiss's sentence does not invalidate the contempt adjudication. This procedure is acceptable because it (1) minimized the prejudice to the state, Weiss's "client," by permitting the trial to continue to completion, and (2) it diminished the likelihood that the offended judge imposed sentence "while smarting under the irritation of the contemptuous act[s]." Sacher v. United States, *supra*, 343 U.S., at 11, 72 S.Ct. at 456.

conduct did not involve the type of personal insult specified by the Supreme Court. *Id.* at 466, 91 S.Ct. 499. Thus, the sentencing procedure did not violate due process.

Weiss also contends that the trial court failed, both at the time of the citations, and at the time of sentencing, to specify the facts upon which it relied to support the convictions.[16] Both the Arizona Supreme Court and the District Court, however, held that specific factual findings are not constitutionally required because the existence of the requisite misconduct can be gleaned from the reporter's transcript. We agree, but only partially, and with the greatest reluctance.

Our reticence stems from the fact that the Arizona summary contempt procedure, which opens the door to arbitrary abuse, is vastly inferior to that employed in most jurisdictions.[17] The summary procedure not only obscures the trial judge's action, thus inhibiting effective appellate review, but also encourages appellate courts to sift through the trial record in search for instances of apparent misconduct that might support the conviction without being fully able to determine whether the trial judge intended those acts as the bases therefor. These shortcomings are not insignificant. They may be so clearly reflected as to reach constitutional dimension. *See* In re Little, *supra*; Fisher v. Pace, *supra*.

■ ■ This, however, does not require complete rejection of the Arizona procedure. A less drastic remedy is available. We have concluded that the summary procedure meets minimal constitutional standards when three conditions are met. First, the facts constituting the contempt must appear on the face of the transcript. *See* Fisher v. Pace, *supra*, 336 U.S. at 160, 69 S.Ct. 425.[18] Secondly, it must appear beyond doubt that the conduct underlying the conviction constituted direct contempt. *See* Johnson v. Mississippi, 403 U.S. 212, 91 S.Ct. 1778, 29 L.Ed.2d 423 (1971); In re Oliver, 333 U.S. 257, 274–275, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Finally, it must be clear that no single act was punished by more than one citation. *Cf.* In

We do not express any opinion regarding the continued viability of the practice allowed in *Sacher* whereby a judge can delay both citing and sentencing a contemnor until the end of a trial. We note, however, that under current concepts of procedural due process, a hearing before an impartial judge may be required in many cases where the citation is not entered when the offense is committed. *See* Mayberry v. Pennsylvania, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971). *Cf.* In re Dellinger, 461 F.2d 389 (7th Cir. 1972).

16. A "judgment" issued by the trial court after Weiss was sentenced appears in the record before us as an exhibit to Burr's answer that was filed in the District Court. Weiss contends, and it is not denied by Burr, that this judgment was not before the Arizona appellate courts. In light of that fact, we, too, decline to consider it, for one focus of our inquiry here is whether the Arizona Supreme Court had any valid basis for concluding that the trial court properly handled the contempt citations. The answer turns, in large part, on the adequacy of the record developed by the trial court and presented for review.

17. The procedure in the federal courts is set forth in Rule 42(a), Fed.R.Crim.P. It provides:

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

*See generally* United States v. Marshall, 451 F.2d 372 (9th Cir. 1971). A contempt conviction is reversible if the trial judge fails to make adequate factual findings.

Similar rules are in force in most states. *See* Annot., 154 A.L.R. 1227 (1945).

18. One result of this rule is that contempt convictions predicated upon observations not reflected in the record (e. g., boisterous conduct or sarcasm) cannot stand. Absent a recorded finding to that effect by the judge, any such contempt adjudication would be void. *Cf.* In re Hallinan, 71 Cal.2d 1179, 81 Cal.Rptr. 1, 459 P.2d 255 (1969).

re Bradley, 318 U.S. 50, 63 S.Ct. 470, 87 L.Ed. 500 (1943); Tipton v. Baker, 432 F.2d 245 (10th Cir. 1970).

■■■■■ Of the several contempt citations, only one fails to meet these criteria. In citing Weiss for the fourth time, the trial judge said:

> "It is the finding of the Court that Mr. Weiss is again in contempt for deliberately, *among other things*, including statements that have been suppressed by the court . . . in an obvious attempt to cause a motion for mistrial." (Emphasis added.)

This citation is patently defective under all three criteria. It is impossible to identify the "other things" the trial court found objectionable. Thus, the state appellate courts were given uncontrolled freedom to seek out instances of possible misconduct that the trial judge may have intended to overlook and to utilize those incidents as the basis for affirming. Neither we nor the Arizona courts have such license. *See* In re Little, *supra*, 404 U.S. at 554, 92 S.Ct. 659. It is equally impossible to discern whether the "other things" were personally observed by the trial judge. If not, "due process requires . . . that the accused be accorded notice and a fair hearing." In re Oliver, *supra*, 333 U.S., at 275–276, 68 S.Ct. at 509. *See also* Johnson v. Mississippi, *supra*. Given these two defects, the double jeopardy criterion is, of course, also unsatisfied. This contempt conviction is also not sustainable.[19]

■■■■■ The last and most difficult question is whether the trial court's contempt procedures in respect to the three remaining citations infringed Weiss's constitutional right to speak in defense and mitigation before being sentenced.[20] *See* Groppi v. Leslie, supra, 404 U.S. at 501, 92 S.Ct. 582. We hold that they did. Due process requires that contemnors, such as Weiss, who are not cited *and* simultaneously punished for the purpose of either restoring courtroom decorum or protecting the safety of court officials,[21] are entitled to an opportunity for allocution.[22] Since Weiss was not accorded this right the remaining contempt adjudication must be vacated.

■■■■ One of the most fundamental principles in Anglo-American law is that "no one shall be punished without having had an opportunity to be heard." *See, e. g.*, Groppi v. Leslie, *supra*; In re Oliver, *supra*, 333 U.S., at 273, 68 S.Ct. 499; In re Hammersmith, 4 Ex. 87, 96, 154 Eng.Rep. 1136, 1140 (1849). An exception to this basic doctrine has long been tolerated for direct legislative and judicial contempts. In those two instances, the power of summary punishment without notice or hearing has been allowed on the theory that it is indispensable to those institutions, if they are to quell disruptions and to maintain their

---

19. The other counts are not amenable to this attack. In each of those instances, an examination of the citation in context reveals all the information due process requires be shown.
 If further proceedings are conducted by the Arizona courts, the irregularity in the fourth citation might be remedied by a detailed written specification of the misconduct.

20. Weiss did not explicitly raise the question; however, it is implicit in his broad attack on the constitutionality of the Arizona court's procedures.

21. Judges may still, without permitting allocution, instantly act to quell disruptions by an order, for example, that the person causing the trouble should be promptly removed from the court and incarcerated.

We need not, at this time, decide whether they must, later, in a less heated atmosphere, review their action and grant the contemnor allocution.

22. The right of allocution was not unknown at common law:
 "One of the reasons for the rule of common law that the defendant [in a direct contempt case] should be . . . present . . . at the time he is sentenced is that he may have an opportunity to say why judgment should not be given against him."
 Ex Parte Dawes, 31 Okl.Cr. 397, 239 P.2d 689, 692 (1925). *See also* In re S.L.T., 180 So.2d 374, 378 (Dist.Ct.App.Fla. 1965); Alexander v. Sharpe, 245 A.2d 279 (Me.1968); State v. Zoppi, 72 N.J. Super. 432, 178 A.2d 632 (1962).

dignity and authority. *See* Cooke v. United States, 267 U.S. 517, 539, 45 S.Ct. 390, 69 L.Ed. 767 (1925). *See also* Groppi v. Leslie, *supra*, 404 U.S. at 503–504, 92 S.Ct. 582. Despite the long history of such direct contempt proceedings, however, the proper procedures to be followed have never been fully delineated.

The Supreme Court has, in numerous cases, considered the constitutional limits on summary contempt proceedings. *See, e. g.*, In re Little, *supra*; In re Green, 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962); Fisher v. Pace, *supra*. Even more frequently, it has scrutinized the functions of the federal courts in summary contempt proceedings under Rule 42(a), Fed.R.Crim.P. and its prede-cessors, thereby indirectly deciding whether certain procedures would violate due process if utilized by the states. *See, e. g.*, In re McConnell, *supra;* In re Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952); Cooke v. United States, *supra.* In all of these cases, however, there have been only two instances wherein the Court has expressly addressed itself to the contemnor's right to allocution. Groppi v. Leslie, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972); Ex parte Terry, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405 (1888).[23] Groppi v. Leslie is the more persuasive of these two opinions, and it guides our decision here.[24]

---

23. In a number of the other cases, the Supreme Court has written that a person who commits a direct contempt may be punished "without further proof of facts and without aid of jury." Fisher v. Pace, *supra*, 336 U.S. at 159, 69 S.Ct. at 427. *See also* In re Oliver, *supra.* Such language, however, does not signify the absence of a right to allocution. In these cases, either the contemnors had been granted a chance to speak at the time they were sentenced, thus rendering the Supreme Court's language mere dictum, or the Court was answering a contemnor's argument that he was entitled to formal notice, an opportunity to prepare a defense, and a formal hearing. *Compare* Sacher v. United States, *supra*; Levine v. United States, 362 U.S. 610, 614, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960), *with* Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959).

24. In Ex parte Terry, decided over 80 years ago, the Court said:
 "[The power which the courts have] of instantly punishing, without further proof or examination, contempts committed in [their] presence . . . cannot be denied [to the courts] without inviting or causing such obstruction to the orderly and impartial administration of justice as would endanger the rights and safety of the entire community . . . .
 . . . [The offended court] was [in this case] not bound to hear any explanation of [the contemnor's] motives, if it was satisfied—and we must conclusively presume, from the record before us, that it was satisfied, from what occurred under its own eye and within its hearing—that the ends of justice demanded immediate action and that no explanation could mitigate his offense, or disprove the fact that he had committed such contempt of its authority and dignity as deserved instant punishment."
Ex parte Terry, 128 U.S. 289, 309–310, 9 S.Ct. 77, 81 (1888).
 *Terry* focused specifically upon the scope of courts' summary contempt powers. For that reason, it is superficially appealing, but it has two flaws. The more fundamental is that in the decades since *Terry* was decided, there has, without question, been a marked increase in the Supreme Court's sensitivity to procedural due process. The mainstream of the decisions involving that doctrine is now, and for some years has been, represented by the cases which require that notice and hearing be granted before deprivations of liberty or property take effect. The importance of notice and meaningful opportunities to be heard has been recognized in criminal proceedings and in numerous areas involving issues less significant than the loss of liberty and the damage to Weiss's professional hopes which are threatened here. Criminal: *See, e. g.*, Morrisey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *cf.*, Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Civil: *See, e. g.*, Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); Morgan v. United States, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129 (1938).

In *Groppi*, the Supreme Court held unconstitutional a contempt resolution of the Wisconsin legislature that imprisoned a putative contemnor without first affording him notice and an opportunity to respond. Speaking for a unanimous Court, Mr. Chief Justice Burger recognized that while a legislative body need not provide the full panoply of procedural rights that would attend a judicial adjudication of contempt, "we have stated time and again that reasonable notice of a charge and an opportunity to be heard in defense before punishment is imposed are 'basic to our system of jurisprudence.'" 404 U.S. at 502, 92 S.Ct. at

"For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must be notified.'" Fuentes v. Shevin, *supra*, 407 U.S., at 4698, 92 S.Ct., at 1994, *quoting* Baldwin v. Hale, 68 U.S. 223, 1 Wall. 223, 17 L.Ed. 531 (1863). Nevertheless, in the past few decades, the Court has vastly expanded the states' obligation to utilize fair processes of decision-making, involving adequate notice and a meaningful hearing. *Terry's* broad language reflects the spirit of an earlier time, when courts were less sensitive to the compelling importance of procedural due process guarantees. Now, when people threatened with only the loss of small chattels or sums of money are entitled to prejudgment hearings, *Terry* is so archaic that its present viability, in full, is doubtful. *Groppi* more accurately reflects current concepts.

Our doubt concerning *Terry* is heightened by the fact that the criminal nature of contempt proceedings has recently been acknowledged by the Supreme Court. Bloom v. Illinois, 391 U.S. 194, 201–202, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). Theretofore, it was considered to be sui generis. *See* Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966).

The evolution away from *Terry* is beneficial and wholly proper:

"Expressing as it does in its ultimate analysis respect enforced by law for that feeling of just treatment which has been evolved through centuries of Anglo-American constitutional history, 'due process' cannot be imprisoned within the treacherous limits of any formula. Representing a profound attitude of fairness between man and man, and more particularly between the individual and government, 'due process' is compounded of history, reason, the past course of decisions, and stout faith in the strength of the democratic faith we profess."

Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring).

The other basis for distinguishing *Terry* is that there is a critical factual difference between it and the case before us. In *Terry*, the contemnor was cited and punished immediately after he assaulted a marshal and brandished a knife in the courtroom. The Court held that his conduct made it plain "that there should be no delay, upon the part of the court, in exerting its power to punish." 128 U.S. at 311, 9 S.Ct. at 82. It expressly reserved the question as to whether the offended court had the power to order Terry's arrest and imprisonment on a later day without first bringing him into court and giving him a reasonable opportunity to be heard. 128 U.S. at 314, 9 S.Ct. at 83. This case presents that undecided issue.

As *Terry* indicates, and we think properly, even rights as fundamental as one's right to speak in his own defense must sometimes yield to other more pressing *societal* interests. *See* United States v. Galante, 298 F.2d 72, 78 (2 Cir. 1962) (Friendly, J., dissenting). In those instances in which a judge decides that the need for maintaining courtroom order or the necessity of protecting the safety of court personnel requires that one be immediately cited and punished, it is unnecessary to grant the right of allocution to the contemnor at that time.

Sacher v. United States, *supra*, is also inapposite. Although the procedure followed and approved there was similar to that utilized here, the defendants therein were accorded the right of allocution before their incarceration. *See* 182 F.2d 416, 418 (2d Cir. 1950), *aff'd*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952). *See also Groppi*, 404 U.S. at 506, 92 S.Ct. 582.

"Under the circumstances such as those in this case, neither a court nor a legislative body has any obligation to afford a contemnor a forum to expound his political, economic, or social views; but this does not mean that some brief period to present matters specifically in defense, extenuation, or mitigation is not required."

586. With sensitivity deferentially attuned to the possibility of burdening legislative functions, the Chief Justice applied the tripartite balancing test of Hannah v. Larche, 363 U.S. 420, 80 S.Ct. 1502, 4 L.Ed.2d 1307 (1960), and concluded that, at least when a time lapse separates contemptuous behavior from legislative reaction, the failure of the legislature to provide for notice and allocution violates procedural regularity secured by the due process clause.

The Court's reasoning was laced with the postulate that a similar action in a judicial context would necessarily have included those two fundamental elements of procedural due process. Since the situation that confronts us here is factually congruent with this postulate, the basis for our ultimate conclusion becomes apparent.

 The Constitution and an unbroken sequence of case law underscore that the right to be heard in one's own defense is, and should be, of the utmost importance. *E. g.*, Groppi v. Leslie, *supra* at 502–503, 92 S.Ct. 582; Sniadach v. Family Finance Corp., 395 U.S. 337, 342–344, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) (Harlan, J., concurring); Mullane v. Central Hanover Trust Co., 339 U.S. 306, 313–314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); In re Oliver, 333 U.S. 257, 273–276, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Whenever a court, not acting directly on the heels of a contemptuous episode, seeks to punish a contemnor, it must first afford him reasonable notice and an opportunity to be heard in his own defense.

 The fact that Weiss, unlike the defendant in *Groppi*,[25] was present during sentencing and failed actively to

seek an opportunity to be heard in his own defense does not constitute a waiver of the vitally important right to allocution. The right to be heard in this situation is undoubtedly a "fundamental right." *See Groppi*, 404 U.S. at 504, 92 S.Ct. 582, 30 L.Ed.2d 632.

 Although such rights may be lost or waived (*See e. g.*, Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971)), we "do not presume acquiescence in [their] loss." Ohio Bell Telephone Co. v. Public Utilities Comm'n, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). Rather, before a waiver can appropriately be found, it must be shown that the defendant made a voluntary and knowing decision to abandon or relinquish a known right or privilege. *See* Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); Illinois v. Allen, 397 U.S. 337, 342–343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970); Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On the record before us, there is not a shred of evidence that Weiss knew of, much less knowingly waived, his right to be heard.[26] Thus, we attribute absolutely no significance to the fact that neither Weiss, nor his attorney, requested a chance to speak, at the sentencing proceedings.

Since the distinctions between this case and *Groppi*[27] are essentially meaningless, that case is, as we view it, controlling. It requires us to hold that because the trial judge delayed the disposition of the citations, and at the time of sentencing was not acting to quell a courtroom disruption to preserve the dignity of the court, or to protect the safe-

---

25. From the Supreme Court's opinion, it appears that Groppi was in jail when the contempt citation imposing a six month prison term upon him was issued. He never had any chance to request his right to allocution.

26. The fact that Weiss did not speak in his own defense when he was cited is not evidence of a knowing waiver. On those five occasions, neither the court nor Weiss

addressed themselves to the merits of the citations.

27. A third possible distinction between this case and *Groppi* is that Weiss was cited immediately after his misconduct occurred. Since the need for action without hearing dissipates with time regardless of whether the contemnor was promptly cited, we think this factual difference is insignificant.

ty of court personnel, allocution was required and its denial was violative of procedural due process.[28]

In light of the fact that the deficiencies in the state courts were largely procedural and, at least as to the first three counts, are correctable, we remand this case to the District Court. It should hold Weiss's petition in abeyance for a reasonable period of time, not exceeding sixty days, so as to allow Arizona an opportunity, if it chooses, to renew the three charges against Weiss which apparently resulted from his excessive zeal. If Arizona fails to act within the specified period, the District Court will grant the petition.

Reversed and remanded, with directions.

SPENCER WILLIAMS, District Judge (dissenting):

I respectfully dissent. There is absolutely no question that the conduct of appellant was contemptuous. He freely admits his guilt as to count one, and the majority herein agrees that in four of the five citations appellant was guilty of "substantive" contempt ". . . that poses significant, imminent threats to the fair administration of justice of the trial court." This fact should, I submit launch this court on a search for grounds to affirm the trial court. Instead, the majority reverses on a point not raised in the pleadings, not briefed for the appeal and only briefly touched upon in oral argument. My dissent however is based on two other grounds. I disagree with the majority that allocution has become a constitutionally protected right in direct contempt of court matters, and I disagree that the record shows such right (if one there be) to have been abridged.

Initially, it is submitted that the factual distinctions between *Groppi*,[1] on which this court so heavily relies, and the instant case, raise a serious question as to its applicability here. In *Groppi*, the appellant and his followers invaded the chambers of the Wisconsin State Assembly during the conduct of its regular session and completely disrupted the ability of the legislature to function. Groppi was removed by police and confined. Two days later, without notice or hearing and without affording him any opportunity to present a defense or material in mitigation, the Assembly adopted its resolution finding Groppi to be in contempt and ordering his imprisonment.

In the instant case the contemptuous acts were in the presence of the court. On each occasion, the court informed the appellant as to the basis of the contempt citation. Additionally, while the court did not at those times ask appellant if he had anything to say in his own defense, the rulings were made after lengthy, often heated discussions during which matters in defense were raised. In no instance did the court *deny* the appellant an opportunity to be heard. Furthermore, the court held a hearing on the question of the sentence (at which appellant was present with counsel) and

28. Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1961), is not inconsistent with either *Groppi* or the result we reach in this case. In *Hill*, the Supreme Court held that in a federal trial, failure to afford the defendant the right to have a last word before the imposition of sentence, as required by Rule 32(a), Fed.R.Crim.P., was not a defect of constitutional dimension.

The opportunity to speak provided by Rule 32 is not constitutionally protected because every defendant who is the subject of a sentencing hearing covered by that Rule has theretofore had a constitutionally guaranteed opportunity to speak concerning his guilt or innocence either at the time he entered his guilty plea [see,

*e. g.*, McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969)] or at his trial.

For interesting and carefully written comments having some relevance to our present case, see generally American College of Trial Lawyers, Report and Recommendations on Disruption of the Judicial Process (July 1970); ABA Project on Standards for Criminal Justice, The Judge's Role in Dealing with Trial Disruptions (May 1971); Hazard, Securing Courtroom Decorum, 80 Yale L.J. 433 (1970).

1. Groppi v. Leslie, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972).

heard motions and argument prior to the imposition of sentence. While there is no showing that appellant was asked whether he had anything to say by way of mitigation, there is no showing that he was denied this opportunity.

Absent from this case are the critical facts that so concerned the Supreme Court in *Groppi:* lack of notice and an opportunity to be heard; possibility of mistaken identity or mental disorder; or the taking of the challenged action out of the presence of the contemnor. *Groppi, supra* at 502–506, 92 S.Ct. 582.[2]

Finally, I am not persuaded that the majority has successfully distinguished Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) and its progeny which uniformly hold that absence of allocution does not raise a Federal Question. In *Hill*, the court held that failure to afford the defendant in a federal trial the right to speak in mitigation before imposition of sentence (as is provided specifically by Fed.R.Crim.P. 32(a)) was not a defect which opened the judgment to a collateral attack under the federal habeas corpus procedures (28 U.S.C. § 2255).

While the court hinted the result might have been different if ". . . the defendant was *affirmatively denied* an opportunity to speak during the hearing at which his sentence was imposed." *Hill, supra*, at 429, 82 S.Ct. at 472, there is no factual basis for invoking such a rule in the instant case.

### ORDER ON PETITIONS FOR REHEARING

ELY, Circuit Judge.

 Following the issuance of our foregoing opinion, the appellant filed a

petition for rehearing. Attached to the latter was a transcript of certain state court proceedings which had not theretofore been a part of the record in our court and which were never presented to the District Court. The appellee contends that this transcript reveals that the Arizona trial court accorded to the appellant his right of allocution. The appellee has now moved this court to augment its record with the addition of the supplemental transcript. This we refuse to do, since, as heretofore stated, that transcript of proceedings was not before the District Court. Rule 10, Fed.R. App.P.

 We do, however, modify our conclusion as to the first, second, and third contempt citations by ordering as follows:

As to citations one, two, and three, the cause is remanded to the District Court for its reconsideration in the light of a certain transcript of state trial court proceedings which was not presented to it, which did not constitute a portion of the record in this court, and which the appellee did not seek to include as a part of the record in this court until after the issuance of this court's opinion.

With the court's opinion modified as hereinabove stated, the appellant's petition for rehearing and the appellee's "Cross-Petition" for rehearing are both denied.

SPENCER WILLIAMS, District Judge, now concurs with the majority in its disposition of the fifth citation, but as to the other four, he adheres to his views as set forth in his dissenting opinion.

2. In truth, this case is much closer on its facts to Sacher v. United States, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952) cited with approval by the Court in *Groppi* (404 U.S. at 506, 92 S.Ct. 582).