Gary Stewart BOARDMAN,
Petitioner–Appellant,

v.

Wayne ESTELLE, Warden,
Respondent–Appellee.

No. 90–55238.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 1, 1991.

Decided Jan. 9, 1992.

Opinion Supplemented,
Rehearing Denied March 11, 1992.

Phillip A. Trevino, Los Angeles, Cal., for petitioner-appellant.

David F. Glassman, Donald F. Roeschke, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before NORRIS, HALL and TROTT, Circuit Judges.

**1524**

TROTT, Circuit Judge:

The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.

*Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961) (Frankfurter, J., writing for the plurality).

Gary Boardman asserts he was denied due process of law because the state trial court refused to allow him to speak at his sentencing hearing after he affirmatively requested to do so. We agree that due process requires criminal defendants be permitted to allocute before sentencing if they so request, and we remand for consideration of whether the error in this case was harmless.

I

Boardman pleaded guilty to four counts of oral copulation and seven counts of lewd conduct, each involving children under 14 years of age. During the sentencing hearing, the judge specifically mentioned a letter received from Conrad N. Perle, the father of one of the victims, noting:

It was an illuminating letter that I read that shows the type of damage that [Boardman has] done in matters of this nature. It creates ongoing problems for so many people. And, so, I guess I would say that ... it was a letter that did have its effect upon me and that it would be a letter that's expressed the problems created by what went on between the defendant and young Mr. Perle.

Before making these comments, the judge stated that he did not know whether Boardman's defense counsel had seen the letter. Later in the hearing, Boardman asked through his counsel to address the court. The court denied the request, stating "I'd just as soon not, if you don't mind. Any remarks should come from you (Boardman's attorney).... Just in general, I find it's better not to have the defendants ...

make comments.... And this is from experience, believe me."

Boardman appealed his sentence, arguing he was denied due process because he was not permitted to respond personally to Mr. Perle's letter. The California Court of Appeal rejected this argument in an unpublished opinion, holding that Boardman's inability to address the court was "inconsequential" in light of other mitigating evidence and argument presented to the sentencing judge by Boardman's counsel. Relying on California case law, the court held that a trial court has discretion to decide whether a criminal defendant represented by counsel should be allowed to speak prior to sentencing.[1] The court further held that, in this instance, the trial court's failure to allow Boardman to speak did not constitute a due process deprivation. The California Supreme Court affirmed without opinion.

Boardman then filed a petition for habeas corpus in the district court, asserting again he was denied due process when the trial court refused his request to speak. In his traverse to the court, filed as a supplement to his habeas corpus petition, Boardman asserted that he was harmed by the court's refusal because he had intended to rebut information offered by parents of the victims. He stated in the traverse:

One very important consideration is that the parents of the victims were expressly invited to address the court and several individuals availed themselves of this opportunity. Consequently, by silencing this petitioner, the Court deprived him of the opportunity to have *his voice* heard, either in answer to any accusations or to personally plead for leniency.

(emphasis in original).

Although the magistrate properly framed the issue as whether a defendant who is represented by counsel in a state court proceeding has a fundamental right to speak in mitigation of his sentence, he found no such right. The magistrate con-

**1.** *See People v. Sanchez,* 72 Cal.App.3d 356, 359, 140 Cal.Rptr. 110 (1977); *see also People v. Wiley,* 57 Cal.App.3d 149, 166, 129 Cal.Rptr. 13 (1976), *disapproved on other grounds, People v.*
*Wheeler,* 22 Cal.3d 258, 286 n. 35, 287, 148 Cal.Rptr. 890, 583 P.2d 748 (1978); *People v. Cross,* 213 Cal.App.2d 678, 681–82, 28 Cal.Rptr. 918 (1963).

cluded that Boardman was asking for an extension of Fed.R.Crim.P. 32(a)(1)(C), which requires federal judges to ask criminal defendants if they wish to address the court. He held there was no basis for extending the federal rule to state court proceedings. He also found no prejudice to Boardman, holding that in light of the "seriousness of the offenses, the harm to the victims, the danger to the community, the facts offered to the trial judge in mitigation of sentence, and the effectiveness of Petitioner's attorney, nothing suggests that anything Petitioner could have personally said would have produced a lesser sentence."

The district court adopted the magistrate's findings and recommendations and dismissed Boardman's habeas corpus petition. The court also denied his subsequent request for a certificate of probable cause, in which Boardman again argued he had been denied due process through denial of allocution. The court refused to consider Boardman's argument that he had been prejudiced by his inability to respond to damaging letters from victims' family members. The court found this argument not properly presented because it had not been raised in the habeas corpus petition or in the traverse. Boardman filed this timely appeal.

## II

■ As a preliminary matter, we must determine whether the district court erred in finding that Boardman did not properly raise the issue of his inability to respond to the Perle letter. California asserts that Boardman now raises "[f]or the first time in these proceedings" the claim that "he could have refuted a damaging letter presented to the state sentencing court." We are at a loss to understand California's argument as well as the district court's ruling. In his traverse, Boardman clearly stated that because he was not permitted to speak at sentencing, he could not rebut information presented to the court by the victims' parents. In his request for probable cause certification, Boardman again raised the issue. Because Boardman did timely and repeatedly raise this issue, we conclude the district court erred in refusing to consider his claim.

## III

■ We now turn to the primary issue in this case: whether a criminal defendant is denied due process if the trial court denies his request to address the court prior to sentencing.[2] Finding no such right, the magistrate below could identify no basis for a right of allocution other than the Federal Rules of Criminal Procedure, which do not apply to state court proceedings. We believe the lower court erred both in overlooking the ancient origins of this common-law right and in failing to recognize the continuing importance of the interests protected by affording the defendant the opportunity to speak on his own behalf.[3] Accordingly, we reverse.

■ Sentencing is a critical stage of the criminal process, *Mempa v. Rhay*, 389 U.S. 128, 133–34, 88 S.Ct. 254, 256–57, 19 L.Ed.2d 336 (1967), to which Constitutional due process guarantees apply. *United*

---

**2.** We reject California's transparent attempt to focus our attention on Boardman's crimes rather than on the significant Constitutional question he raises. California argues that Boardman was not harmed by denial of allocution because of the offensive nature of his crimes. "What justification would a child molester who furnishes children drugs offer in his behalf?" The repugnant nature of those crimes makes it all the more vital that he have the opportunity to explain his actions and plead for leniency from the court. *See, e.g., In re Gustafson*, 650 F.2d 1017, 1027 (9th Cir.1981) ("Even a defendant convicted of the most heinous crime has the right to address the court prior to sentencing and thus apologize for or explain his or her conduct.") Because we conclude that the right to speak is of Constitutional dimension, *see infra*, California's view would limit the Constitutional rights of those defendants who commit unusually distasteful crimes. We cannot accept such a result.

**3.** We agree with the dissent that due process precludes a sentencing judge from relying on materially untrue information or assumptions. However, we believe that due process during a sentencing hearing affords the defendant rights beyond merely preventing the sentencing judge from considering untrue information.

*States v. Lundien,* 769 F.2d 981, 986 (4th Cir.1985), *cert. denied,* 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986). The requirements of due process "cannot be ascertained through mechanical application of a formula," but are determined by " 'history, reason, the past course of decisions, and stout confidence in the strength of the democratic faith which we profess.' " *Groppi v. Leslie,* 404 U.S. 496, 500, 92 S.Ct. 582, 585, 30 L.Ed.2d 632 (1972) (quoting *Joint Anti–Fascist Committee v. McGrath,* 341 U.S. 123, 162–63, 71 S.Ct. 624, 643–44, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). In the context of criminal law, the backbone of that democratic faith is the right of a criminal defendant to defend himself against his accusers; and it has long been recognized that allocution, the right of the defendant to personally address the court,[4] is an essential element of a criminal defense. Specifically, the right of allocution "contemplates an opportunity for the defendant to bring mitigating circumstances to the attention of the court." *Sherman v. United States,* 383 F.2d 837, 839 (9th Cir.1967).

Denial of the "traditional right of a criminal defendant to allocution prior to the imposition of sentence," *Groppi,* 404 U.S. at 501, 92 S.Ct. at 586, was recognized as requiring reversal as early as 1689. *Green v. United States,* 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961); *Del Piano v. United States,* 575 F.2d 1066, 1069 (3rd Cir.1978). When the right of allocution matured under English common law, however, a criminal defendant was not permitted counsel and could not testify on his own behalf. *State v. Carr,* 172 Conn. 458, 473, 374 A.2d 1107, 1115 (1977). The defendant's allocution before sentencing

was his only opportunity to address the court. Even though the form of criminal trials has changed significantly over time, the interests supporting the right of a defendant personally to address his sentencer have remained constant. In this regard, the Supreme Court found in 1961 that allocution is still a vital part of the sentencing process.

> We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century—the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel. But we see *no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain.* None of these modern·innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation.

*Green,* 365 U.S. at 304, 81 S.Ct. at 655.[5]

After recognizing the importance of the right of allocution in *Green,* the Supreme Court concluded the following year in *Hill v. United States,* 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962), that a sentencing judge's failure to ask a defendant if he had anything to say, although a violation of Fed.R.Crim.P. 32(a)(1)(C),[6] was not an error of Constitutional dimension and could not support a writ of habeas corpus. The Court noted, however, that it was *not* presented with a defendant who was

> *affirmatively denied* an opportunity to speak during the hearing at which his sentence was imposed. Nor is it suggested that in imposing the sentence the [judge] was either misinformed or un-

---

**4.** "Allocution: Formality of court's inquiry of prisoner as to whether he has any legal cause to show why judgment should not be pronounced against him on verdict of conviction." Black's Law Dictionary 70 (5th ed. 1979).

**5.** The dissent summarily dismisses *Green* on the premise that it is inapplicable because the Court was construing Rule 32(a). However, the dissent does not account for the Court's explicit discussion of the distinct rights underlying the "modern innovations" of procedural rules.

**6.** The common-law right of allocution has been codified at Rule 32(a)(1)(C) of the Federal Rules of Criminal Procedure. *United States v. Franklin,* 902 F.2d 501, 507 (7th Cir.), *cert. denied,* — U.S. —, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990). Failure to comply with Rule 32(a)(1)(C) requires remand for resentencing. *United States v. Navarro–Flores,* 628 F.2d 1178, 1184 (9th Cir. 1980); *see also United States v. Moree,* 928 F.2d 654, 656 (5th Cir.1991); *United States v. Walker,* 896 F.2d 295, 301 (8th Cir.1990).

informed as to any relevant circumstances. Indeed there is no claim that the defendant would have had anything at all to say if he had been formally invited to speak. Whether [habeas corpus] relief would be available if a violation of Rule 32(a) occurred in the context of other aggravating circumstances is a question we therefore do not consider. *Id.* at 429, 82 S.Ct. at 472 (emphasis added). *Hill* therefore left open the question of whether a defendant who *asks* the court to speak has a Constitutionally guaranteed right to do so.

The next term, the Court hinted at how this open question should be answered. In *United States v. Behrens*, 375 U.S. 162, 84 S.Ct. 295, 11 L.Ed.2d 224 (1963), the Court again affirmed the importance of a federal defendant's personal right to speak before sentencing, holding that the district court erred in modifying the defendant's sentence in his absence. Justice Black, writing for the Court, described allocution as a right "ancient in the law," which the defendant must be allowed to invoke just prior to sentencing. *Id.* at 165, 84 S.Ct. at 297. "It is then that the right of the defendant to be afforded an opportunity to make a statement to the judge in his own behalf is of most importance." *Id.* In his concurring opinion, Justice Harlan described allocution as an "elementary right." *Id.* at 167, 84 S.Ct. at 298. He observed: "Even if he has spoken earlier, a defendant has no assurance that when the time comes for final sentence the district judge will remember the defendant's words in his absence and give them due weight." *Id.* at 168, 84 S.Ct. at 298. Justice Black noted that the right of allocution is "recognized" in Fed. R.Crim.P. 32(a). *Id.* at 165, 84 S.Ct. at 296. Justice Harlan described this "elementary right" as "embodied" in Rule 32(a). *Id.* at 167, 84 S.Ct. at 298. *See also McGautha v. California*, 402 U.S. 183, 217, 91 S.Ct. 1454, 1472, 28 L.Ed.2d 711 (1971) (allocu-

tion is a right of "immemorial origin"). We read this to express the Justices' view that there is a long-standing basis for the right of allocution, separate and independent of the entitlement created by Rule 32(a).

Most recently, the Court explicitly recognized in *McGautha* that it had not yet confirmed the Constitutional basis for the right of allocution: "This Court has not directly determined whether or to what extent the concept of due process of law requires that a criminal defendant wishing to present evidence or argument presumably relevant to the issues involved in sentencing should be permitted to do so." *Id.* at 218 n. 22, 91 S.Ct. at 1473 n. 22 (rejecting defendant's claim that he was denied the right of allocution because guilt and penalty were determined in one proceeding, and his statements in asking for leniency in sentencing could be considered in determining guilt). The Court assumed without deciding that the Constitution does require that the trial court permit a defendant to speak at sentencing if he so requests. *Id.* at 218–19, 91 S.Ct. at 1472–73. It is precisely this lingering question that we must decide today.

## IV

■ California first argues that a defendant who elects to be represented by counsel has no right to speak in his own behalf. The California courts have adopted this view, finding no right of allocution for a represented defendant. "The [defendant] was represented by counsel and it was the function of that counsel, rather than of the defendant himself, to address the court on the defendant's behalf." *People v. Cross*, 213 Cal.App.2d 678, 682, 28 Cal.Rptr. 918 (1963).

We reject this argument. A defendant who chooses to be represented by counsel does not waive his right to allocution.[7]

---

**7.** The dissent worries about creating a right of "hybrid" representation. However, a defendant's right of allocution is entirely separate from a defendant's right to be represented by counsel. The right of allocution can be analogized to a defendant's right to testify on his

behalf. A defendant who elects representation by counsel does not simultaneously waive his right to testify at trial. Similarly, a defendant who presents his case through a surrogate, his attorney, does not forego the right to personally

"That a defendant is entitled to representation of counsel at all stages of the proceedings, including sentencing, does not necessarily mean he cannot speak 'in his own behalf' ... in mitigation of punishment." *Taylor v. United States*, 285 F.2d 703, 705 (9th Cir.1960) (permitting counsel to speak does not satisfy Rule 32(a)'s requirement that the defendant *personally* be offered the opportunity to speak). A defendant's choice to be represented by counsel is not a complete surrender of his right to direct his defense,[8] and does not permit a court forcibly to interpose that counsel between the defendant and the exercise of his personal rights.

> When the administration of the criminal law ... is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards ... is to imprison a man in his privileges and call it the Constitution.

*Adams v. United States ex rel. McCann*, 317 U.S. 269, 279–80, 63 S.Ct. 236, 241–42, 87 L.Ed. 268 (1942), *quoted in Faretta v. California*, 422 U.S. 806, 815, 95 S.Ct.

2525, 2531, 45 L.Ed.2d 562 (1975). The Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused *personally* the right to make his defense." *Faretta*, 422 U.S. at 819, 95 S.Ct. at 2533 (emphasis added) (holding that a defendant has a right of self-representation guaranteed by the Sixth Amendment). Because we find the right to allocute at sentencing to have the same personal quality as the right to make a defense, we reject California's argument that Boardman abandoned his right of allocution when he retained counsel.

## V

Boardman was affirmatively denied an opportunity to speak. Furthermore, he asserts that he would have responded to the victim's parent's letter, unlike the *Hill* defendant who did not claim he "would have had anything at all to say." *Hill*, 368 U.S. at 429, 82 S.Ct. at 472. Although we have not yet decided this issue,[9] our sister circuits have reached conflicting results.

---

address a sentencing judge before imposition of sentence.

**8.** The California Supreme Court recently reaffirmed a criminal defendant's right to control certain areas of his defense in *People v. Bloom*, 48 Cal.3d 1194, 1221, 259 Cal.Rptr. 669, 774 P.2d 698 (1989), *cert. denied*, 494 U.S. 1039, 110 S.Ct. 1503, 108 L.Ed.2d 638 (1990).

> On numerous occasions, we have "recognized the need to respect the defendant's personal choice on the most 'fundamental' decisions in a criminal case." (*People v. Frierson* (1985) 39 Cal.3d 803, 814, 218 Cal.Rptr. 73, 705 P.2d 396.) Thus even in a capital case defense counsel has no power to prevent the defendant from testifying at trial (*People v. Lucky* (1988) 45 Cal.3d 259, 282, 247 Cal.Rptr. 1, 753 P.2d 1052 [*cert. denied*, 488 U.S. 1034, 109 S.Ct. 848, 102 L.Ed.2d 980 (1989)]) and the defendant may testify at the penalty phase to a preference for the death penalty (*People v. Guzman* (1988) 45 Cal.3d 915, 961–963, 248 Cal.Rptr. 467, 755 P.2d 917 [*cert. denied*, 488 U.S. 1050, 109 S.Ct. 882, 102 L.Ed.2d 1005 (1989)]; *People v. Grant* (1988) 45 Cal.3d 829, 849–850, 248 Cal.Rptr. 444, 755 P.2d 894 [*cert. denied*, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1006 (1989)]).
> ... This court endorse[s] the view that both court and counsel are obligated to respect a

competent defendant's considered and voluntary decisions on matters of fundamental importance affecting trial of the action....
(footnote omitted) (citations omitted).

**9.** We have obliquely touched on the issue in two cases. Most recently, Judge Reinhardt relied on *Ashe v. North Carolina*, 586 F.2d 334 (4th Cir. 1978), *see discussion infra*, in his dissent from the original panel opinion in *Coleman v. Risley*, 839 F.2d 434, 493 (9th Cir.1988), *withdrawn*, *rev'd sub nom. Coleman v. McCormick*, 874 F.2d 1280 (9th Cir.1989) (en banc), in which he pressed the importance of permitting a defendant to comment before sentencing. In *Coleman*, however, the issue was the trial judge's failure to consider statements by the defendant's *counsel* prior to sentencing, not an affirmative denial of the defendant's personal right of allocution.

We also grazed this issue in *Weiss v. Burr*, 484 F.2d 973 (9th Cir.1973), *cert. denied*, 414 U.S. 1161, 94 S.Ct. 924, 39 L.Ed.2d 115 (1974), holding that a contemnor's right to be heard in his own defense was "undoubtedly a 'fundamental right.'" *Weiss* does not control the present case, however, because there neither the defendant nor his attorney were given the opportunity to be heard prior to sentencing. Furthermore, the *Weiss* defendant did not make a request to address the court, as did Boardman.

The Fourth Circuit, confronted with facts very similar to those presented here, found that the right of allocution was Constitutionally guaranteed. In *Ashe v. North Carolina,* 586 F.2d 334 (4th Cir.1978), *cert. denied* 441 U.S. 966, 99 S.Ct. 2416, 60 L.Ed.2d 1072 (1979), two state court defendants sought to address the court prior to sentencing. The judge denied their request. The defendants filed a habeas corpus petition in federal court, asserting they were denied due process because they were not afforded the right of allocution. The Fourth Circuit agreed, noting that the Supreme Court had left this issue open in *Hill.* "We think that when a defendant effectively communicates his desire to the trial judge to speak prior to the imposition of sentence, it is a denial of due process not to grant the defendant's request." *Id.* at 336; *see also United States v. Miller,* 849 F.2d 896, 897 (4th Cir.1988) (citing *Ashe* for proposition that defendant must be permitted to speak for reasonable amount of time).

Other circuits have also found the right of allocution to be Constitutionally guaranteed, although none has engaged in even the brief analysis of *Ashe.* The Fifth and Eleventh Circuits have held that a defendant's rights to be present and to allocute at sentencing are of Constitutional dimension. *United States v. Moree,* 928 F.2d 654, 656 (5th Cir.1991) (citing *United States v. Huff,* 512 F.2d 66, 71 (5th Cir. 1975) [10]); *United States v. Jackson,* 923 F.2d 1494, 1496 (11th Cir.1991) (also relying on *Huff*). *But see United States v. Fleming,* 849 F.2d 568, 569 (11th Cir.1988) (right to allocution not Constitutional, citing *Hill*).

Some circuits, on the other hand, have concluded that the right of allocution is not Constitutionally secured. These circuits rely primarily on *Hill*'s statement that a trial judge's failure "to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed" is not a Constitutional error. *Hill,* 368 U.S. at 428, 82 S.Ct. at 471; *United States v. Coffey,* 871 F.2d 39, 40 (6th Cir. 1989) (no constitutional basis for allocution, citing *Hill*); *Fleming,* 849 F.2d at 569 (same). In *Coffey,* the Sixth Circuit relied on *Hill* to find no Constitutional violation. The *Coffey* defendant, however, did not ask to address the court, and hence there was no affirmative denial as there was in the present case. *See United States v. Prince,* 868 F.2d 1379, 1386 (5th Cir.), *cert. denied,* 493 U.S. 932, 110 S.Ct. 321, 107 L.Ed.2d 312 (1989) (no Constitutional violation where defendant did not ask to address the court); *United States v. De La Paz,* 698 F.2d 695, 697 (5th Cir.1983) (citing *Hill* for the proposition that failure to *offer* the defendant the opportunity to speak is "not a fundamental defect.")

All of the cases denying Constitutional status to allocution are factually distinguishable because they do not involve the denial of an *affirmative* request to speak, as in the present case. More importantly, however, we find their reasoning unpersuasive because, in finding that allocution has no Constitutional basis, they overstate *Hill*'s carefully defined holding. These circuits ignore the Court's limiting comment that it did not consider the impact of "aggravating circumstances" under which a denial of allocution might be a due process violation. Because we read *Hill* more narrowly, and with emphasis on the Court's acknowledgment of the limits of its holding, we do not adopt the reasoning of these circuits.

Recognizing the personal nature of the Sixth Amendment's guarantee of the right to make a defense, the unique ability of a defendant to plead on his own behalf, and the Supreme Court's acknowledgment of the continuing vitality of the practice of

---

**10.** The basis for the court's reliance on *Huff* is not clear. *Huff* concerned a defendant who was denied the opportunity to respond to materials delivered *ex parte* to the sentencing judge. In remanding for resentencing, the court noted that the right to be present and to be represented at sentencing is Constitutionally based. The court stressed the importance of permitting a defendant to respond to all prejudicial pre-sentence material submitted by the prosecution. However, nowhere does the *Huff* court state that the right to allocute is Constitutionally based.

permitting a defendant to allocute before sentencing, we hold that allocution is a right guaranteed by the due process clause of the Constitution. Our holding is limited to circumstances in which a defendant, either unrepresented or represented by counsel, makes a request that he be permitted to speak to the trial court before sentencing. If the trial court denies that request, the defendant has not received due process.

## VI

■ We next consider whether such a denial of due process can be held harmless. Because we find denial of allocation subject to harmless error analysis, we remand to the district court to determine whether it was harmless in this case.

Most errors of Constitutional magnitude are subject to harmless error analysis, except those "which are so basic to a fair trial that their infraction can never be treated as harmless error." *Arizona v. Fulminante*, ── U.S. ──, 111 S.Ct. 1246, 1263–64, 113 L.Ed.2d 302 (1991) (Rehnquist, J., writing section II for the Court); *see also Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 1450–51, 108 L.Ed.2d 725 (1990) (Constitutionally permissible to apply harmless error analysis to instructional error that affected sentencing). The Supreme Court has distinguished between errors which affect "the framework within which the trial proceeds," which can never be harmless, and errors in the trial itself. *Fulminante*, 111 S.Ct. at 1265. The latter class of errors, even when they implicate significant Constitutional rights or involve serious police misconduct, are subject to harmless error analysis. *Id.* Denial of the right of allocution is an error in the conduct of the trial, not a structural defect in the trial process. As such, we find that it is not a fundamental defect and so may be treated as harmless. We agree with the Fourth Circuit's approach in *Ashe*, in which the court remanded to the district court for a determination of whether the defendants actually asked to speak, and what they would have said if given the requested opportunity.

Should this information prove to be irrelevant or cumulative in view of statements by their attorney at sentencing, the denial of their right to speak may be found to be harmless error. Otherwise, if the request was made and denied, petitioners' sentences must be vacated, and they should be resentenced in a proceeding which allows them the opportunity to speak in their own behalf.

*Ashe*, 586 F.2d at 337.

In the present case, the sentencing hearing transcript establishes that Boardman, through his counsel, made a request to address the court. Boardman asserts that he was prejudiced by his inability to respond to a letter from Mr. Perle, one of the victim's parents. In discussing the impact of the letter at sentencing, the trial court judge said to Boardman's attorney "I don't know if you saw [the letter]." There has been no determination of whether either Boardman or his attorney saw the letter. Furthermore, we do not know what statements Boardman would have made to the court. Based on this record, we are unable to determine whether the error was harmless. We remand for a determination of whether Boardman did see the letter, and what he would have said in his defense if permitted to speak. If the district court determines that the denial of allocution was not harmless, the case should be returned to the state courts so Boardman can be resentenced after exercising his right of allocution.

REVERSED and REMANDED.

CYNTHIA HOLCOMB HALL, Circuit Judge, dissenting:

I believe the majority errs by finding that Boardman had a constitutional right to personally address the court at his sentencing. In my view, the majority transforms the common law right of allocution into a federal constitutional mandate. The majority's holding is at odds with the wide discretion enjoyed by sentencing judges and the accordingly narrow due process rights of defendants at sentencing. The majority, moreover, cavalierly and unwisely places its stamp of approval upon "hybrid representation" of a criminal defendant by allowing Boardman all the advantages of

proceeding *pro se* and through counsel. With all due respect, I must dissent.

### I

At its outset, the majority's analysis veers onto the wrong track by failing to examine the general contours of due process at sentencing before proceeding to the highly specific question of allocution. To determine what process is due a defendant in a state court sentencing proceeding, we must first look to *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).[1] In *Williams*, the Supreme Court upheld a sentence imposed by a state judge on the basis of a presentence report containing hearsay. The Court sharply distinguished procedures appropriate for the guilt phase of a state criminal trial from those appropriate for the sentencing determination:

> Tribunals passing on the guilt of a defendant always have been hedged in by strict evidentiary procedural limitations. But both before and since the American colonies became a nation, courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law.

*Id.* at 246, 69 S.Ct. at 1082. The judge's wide discretion at sentencing accommodates a state's policy of tailoring a sentence to the individual defendant's culpability and capacity for reform. *Id.* at 247–51, 69 S.Ct. at 1083–85.

In fact, there is no constitutional right to a sentencing hearing at all, but most states do provide for such a hearing. *Specht v. Patterson*, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967) (no right to a sentencing hearing or to participate in such a hearing); Richard B. McNamara, *Constitutional Limitations on Criminal Procedure* § 18.02, at 299 (1982) (constitution does not require hearing but most states provide for one). Part III of the majority's opinion notes that a sentencing hearing, if provided, is a critical stage for Sixth Amendment right to counsel purposes. That observation, however, does nothing to further our analysis of whether the Due Process Clause mandates a right to allocution. *See* R. McNamara, *supra,* § 18.02, at 299.

Stringent evidentiary and procedural protections are unnecessary at sentencing because "[o]nce the reasonable-doubt standard has been applied to obtain a valid conviction, 'the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him.'" *McMillan v. Pennsylvania*, 477 U.S. 79, 92 n. 8, 106 S.Ct. 2411, 2419 n. 8, 91 L.Ed.2d 67 (1986) (quoting *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451 (1976)). Thus, a judge may rely upon hearsay presented within a presentence investigative report. *Williams*, 337 U.S. at 249–51, 69 S.Ct. at 1084–85; *United States v. Wondrack*, 578 F.2d 808, 809–10 (9th Cir.1978); *see also Farrow v. United States*, 580 F.2d 1339, 1353 n. 25 (9th Cir.1978) (dicta) ("[A] defendant has no due process right to cross examine witnesses who supply information relied on in sentencing."). "We must recognize that most of the information now relied upon by judges to guide them in the intelligent imposition of sentences would be unavailable if information were restricted to that given in open court by witnesses subject to cross-examination." *Williams*, 337 U.S. at 250, 69 S.Ct. at 1084. Thus, information considered by a judge at sentencing need only be supported by "'some minimum factual basis.'" *Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir.1987) (quoting *United States v. Petitto*, 767 F.2d 607, 611 (9th Cir.1985)).

---

**1.** Because the Supreme Court's attention has been focused upon the process due to defendants in capital cases, we must be careful not to confuse the rules applicable to capital and noncapital sentencing. *See Gardner v. Florida*, 430 U.S. 349, 357–58, 97 S.Ct. 1197, 1204–05, 51 L.Ed.2d 393 (1977) (plurality opinion) (*Williams* was decided before the Court recognized that "death is a different kind of punishment from any other"). *Williams* appears to remain the starting point for analyzing sentencing hearings in non-capital cases. *See Creech v. Arave*, 947 F.2d 873, 880 (9th Cir.1991); *Brothers v. Dowdle*, 817 F.2d 1388, 1390 (9th Cir.1987).

Even though due process does not require a state court to provide a sentencing hearing, the Due Process Clause does provide some limitations on sentencing. These limitations prevent a sentencing judge from relying on materially untrue information. *See Brothers,* 817 F.2d at 1390. First, a sentencing court may not rely upon prior convictions obtained in violation of the right to counsel. *United States v. Tucker,* 404 U.S. 443, 449, 92 S.Ct. 589, 593, 30 L.Ed.2d 592 (1972); *United States v. Morgan,* 595 F.2d 1134, 1136 (9th Cir.1979). Boardman does not argue that his sentencing judge relied upon any such convictions.

Second, due process forbids a defendant's sentence being based upon "assumptions concerning his criminal record which [are] materially untrue." *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948). In *Burke,* the Court held that due process was violated when a sentencing court mistakenly believed the petitioner to have been convicted of certain crimes in the past. The court had erroneously recounted three prior "convictions" at sentencing when the petitioner had, in fact, been acquitted of two of those prior charges and the charges were dismissed in the third. *Id.* at 740, 68 S.Ct. at 1255. The Court emphasized that the unrepresented petitioner was unable to correct the sentencing court's mistaken information about his criminal history:

> It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

*Id.* at 741, 68 S.Ct. at 1255. Thus, I believe that the only hook that Boardman can hang a due process claim upon is a showing that his sentencing judge relied on materially untrue information in formulating his sentence.

Boardman argues that the sentencing judge acted inappropriately by considering a letter from a parent of one of his victims without allowing Boardman to personally respond to the letter. Boardman does not, and could not, argue that consideration of the letter was itself a due process violation. The parent's account of the effects of Boardman's behavior on his victim has a sufficient factual basis to satisfy due process. Indeed, the Supreme Court has held that such "victim impact statements" may be considered by courts at sentencing. *See Payne v. Tennessee,* — U.S. —, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991) (upholding over eighth amendment challenge admission of victim impact evidence at sentencing phase of capital trial).

Boardman only argues that his inability to personally address the court violated his right to due process at sentencing. Boardman has made no showing whatsoever that the judge relied upon false information or assumptions, and has proffered nothing in his argument to this court that he would have liked to tell the court at sentencing. *Cf. Lankford v. Idaho,* — U.S. —, 111 S.Ct. 1723, 1730–31, 114 L.Ed.2d 173 (1991) (due process violated when sentencing judge led defense counsel to believe that he was not considering imposition of death penalty and then sentenced defendant to death because defense counsel "would have advanced arguments that addressed these circumstances"). Thus, *Burke* and *Lankford* teach us that the judge's refusal to allow Boardman to speak personally did not violate due process because that refusal did not cause the judge to rely upon inaccurate information in sentencing Boardman.

Moreover, Boardman was not rendered unable to respond to the judge or to the letter. Unlike the petitioner in *Burke,* Boardman was represented by counsel. His counsel could have communicated any of Boardman's arguments or concerns to the sentencing judge. "Underlying the right to allocution ... is the theme that matters in mitigation of sentence should be fairly presented to a sentencing judge prior to rendition of final sentence." *Katz v. King,* 627 F.2d 568, 576 (1st Cir.1980) (noting uncertain parameters of due process at non-capital sentencing without deciding whether right to allocution is constitutional

or statutory). Boardman could have corrected any erroneous assumptions held by the judge through his lawyer. Thus, I believe that the refusal of the sentencing judge to allow Boardman to personally address the court did not violate his right to due process.

My conclusion is consistent with the history of the right to allocution. At common law, allocution was not an opportunity for the defendant to plead for mercy because a sentence of death was mandatory for most felonies. Note, *Procedural Due Process at Judicial Sentencing for Felony*, 81 Harv.L.Rev. 821, 821 n. 2, 832 (1968). Instead, its function was "to give the defendant a formal opportunity to present one of the strictly defined legal reasons which required the avoidance or delay of sentencing." *Id.* at 832–33. It seems to me, then, that the functional interests served by allocution can properly be assigned to counsel by a sentencing judge. *See id.* at 833 ("Since an affirmative answer to the *allocutus* has to be a showing of a legal ground why sentence should not be pronounced, it would seem appropriate, where the defendant has counsel, to put the question to counsel rather than to the defendant himself.").

Federal Rule of Criminal Procedure 32(a) now mandates that the right of allocution be afforded in federal criminal trials. The majority relies heavily upon cases interpreting that rule to discover a Constitutional right to allocution. *See, e.g., Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961). Those cases, however, tell us nothing about what the Constitution mandates in a state court sentencing proceeding. *See* Note, *supra*, at 832 (rule 32(a) codifies a common law right). If anything, *Hill* teaches us that the right to allocution is *not* embodied in the Constitution. *Hill* held that the failure of the federal sentencing judge to ask the defendant *sua sponte* whether he wished to speak was a violation of Rule 32(a). *Hill*, 368 U.S. at 426, 82 S.Ct. at 470. The Court plainly held that the error was not constitutional in nature. *Id.* at 428, 82 S.Ct. at 471.

Thus, *Hill, Green,* and other cases interpreting Rule 32(a) are simply immaterial to our determination of what procedures the Due Process Clause mandates in a state court sentencing proceeding.

The majority's failure to focus upon cases interpreting the Due Process Clause in order to discover what process was due Boardman in his state court sentencing proceeding has led it astray. Both *Burke* and *Tucker* inform us that no due process violation has occurred here because Boardman was not sentenced based upon inaccurate or unreliable information. Boardman's asserted right to allocute at sentencing is not grounded upon a desire to correct mistaken factual or assumptive beliefs held by the sentencing judge. Even had Boardman harbored grievances with the sentencing judge's information or beliefs, Boardman's counsel provided a ready avenue for him to convey those concerns to the judge. Thus, the majority's conclusion that due process mandates a right to allocution at sentencing is in error because it ignores the larger due process structure upon which it purports to rely.

## II

The majority's holding effectively grants Boardman a right to hybrid representation by holding that he had the constitutional right to interact directly with the court even though he was represented by counsel. The Supreme Court has cautioned that hybrid representation is not mandated by the Sixth Amendment. *See McKaskle v. Wiggins*, 465 U.S. 168, 183, 104 S.Ct. 944, 953, 79 L.Ed.2d 122 (1984) (appointment of standby counsel does not violate right to self-representation, but *pro se* defendant may not demand such assistance).

A criminal defendant must expressly and unequivocally waive his Sixth Amendment right to counsel in order to invoke his right to self-representation. *Adams v. Carroll*, 875 F.2d 1441, 1444 (9th Cir.1989). When a defendant equivocates, he is presumed to have requested the assistance of counsel because exercising the right to self-representation is generally believed to be

against the best interests of defendants untrained in the law. *Jackson v. Ylst,* 921 F.2d 882, 889 (9th Cir.1990). Boardman at no time unequivocally expressed a desire to represent himself and forego the assistance of counsel. *See, e.g., Meeks v. Craven,* 482 F.2d 465, 467 (9th Cir.1973) (passing statement of defendant invoking right to self-representation was a "prototype of equivocation"). Thus, Boardman cannot claim a right to allocute based upon the right of self-representation because he did not waive his right to representation.

In addition to imperiling criminal defendants' right to counsel, the majority's analysis seriously undermines the integrity of criminal trials by creating "a constitutional right to choreograph special appearances by counsel." *Wiggins,* 465 U.S. at 183, 104 S.Ct. at 953 (mocking such a result). Under the majority's analysis, a criminal defendant who vacillates about whether he chooses to be represented by counsel will always be able to argue on appeal either that he was denied the right to assistance of counsel or the right to represent himself. Because I believe that the majority opinion is therefore most unwise, I respectfully dissent.

The slip opinion in this case, *Boardman v. Estelle,* No. 90–55238, slip op. 105 (9th Cir. Jan. 9, 1992), is supplemented as follows:

PER CURIAM:

■ In our earlier opinion in this case, we held that a criminal defendant has a Constitutional right to speak at his sentencing hearing after he affirmatively requests to do so. *Boardman v. Estelle,* No. 90–55238, slip op. 105 (9th Cir. Jan. 9, 1992). The state now contends for the first time, in a petition for rehearing, that our holding created a "new rule" on habeas, in violation of the doctrine of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). The state argues it has the right belatedly to avail itself of the *Teague* (new-rule) defense. We deny the petition for rehearing because the state has waived the *Teague* defense in this case.

The Supreme Court has not yet decided whether a state may waive the *Teague* defense by failing timely to raise it. *See* Marc M. Arkin, *The Prisoner's Dilemma: Life in the Lower Federal Courts After* Teague v. Lane, 69 N.C.L.Rev. 371, 415–16 (1991) ("The question of when the government may waive a *Teague* nonretroactivity defense is not clearly settled.... While the Supreme Court has now decided that the government *may* explicitly waive a *Teague* nonretroactivity claim, it has not given the lower courts guidance regarding any other circumstances under which such a waiver should be found." (footnotes omitted)).

Some circuits (including this one) have allowed waiver, and others have not, but none has engaged in any significant analysis on the issue. *See Adamson v. Lewis,* 955 F.2d 614, 615–16 (9th Cir.1992) (*Teague* defense argued for the first time on fifth appeal and third en banc proceeding; defense "not appropriate to be raised at this late stage"); *Coe v. Thurman,* 922 F.2d 528, 533 n. 1 (9th Cir.1990) (authored opinion with per curiam addition in 1991) (court has "discretion" to address *Teague* defense raised for the first time in petition for rehearing); *Maynard v. Dixon,* 943 F.2d 407, 418 (4th Cir.1991) ("assuming, without deciding, that the State waived its defense of non-retroactivity ... that may have been available to it under *Teague v. Lane* "), *cert. denied,* — U.S. —, 112 S.Ct. 1211, 117 L.Ed.2d 450 (1992); *Smith v. Black,* 904 F.2d 950, 981 n. 12 (5th Cir.1990) ("we believe the better choice is to reach the *Teague* issue now pressed by the State"); *Kordenbrock v. Scroggy,* 919 F.2d 1091, 1104 n. 4 (6th Cir.1990) (en banc) ("The state has waived any argument based on *Teague* "), *cert. denied,* — U.S. —, 111 S.Ct. 1608, 113 L.Ed.2d 669 (1991); *Hill v. McMackin,* 893 F.2d 810, 813 (6th Cir.1989) ("Although the parties did not address the question whether the rule ... may be applied retroactively, we find ourselves compelled to do so in light of ... *Teague v. Lane....* "), *disapproved on other grounds, Ylst v. Nunnemaker,* — U.S.

——, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), *as noted in Couch v. Jabe,* 951 F.2d 94, 96 (6th Cir.1991) (per curiam); *Hanrahan v. Thieret,* 933 F.2d 1328, 1337 n. 19 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 446, 116 L.Ed.2d 464 (1991); *Hopkinson v. Shillinger,* 888 F.2d 1286, 1288 (10th Cir.1989) (en banc) ("We hold that the nonretroactivity defense is not waived, and should be considered"), *cert. denied,* —— U.S. ——, 110 S.Ct. 3256, 111 L.Ed.2d 765 (1990); *Card v. Dugger,* 911 F.2d 1494, 1523 n. 30 (11th Cir.1990).

▮ Ordinarily, arguments not timely presented are deemed waived. *E.g., Winebrenner v. United States,* 924 F.2d 851, 856 n. 7 (9th Cir.1991). This general doctrine of waiver applies to arguments raised for the first time in a petition for rehearing. *United States v. Lewis,* 798 F.2d 1250, 1250 (9th Cir.1986) (order amending opinion published at 787 F.2d 1318 (9th Cir.1986), and denying petition for rehearing and rehearing en banc).

The state implicitly argues the *Teague* defense is not subject to this ordinary rule, however, because *Teague* doctrine is grounded in concerns for comity and federalism. *See Teague,* 489 U.S. at 308–10, 109 S.Ct. at 1073–75; *cf. Younger v. Harris,* 401 U.S. 37, 43–54, 91 S.Ct. 746, 750–55, 27 L.Ed.2d 669 (1971), *cited in Teague,* 489 U.S. at 310, 109 S.Ct. at 1075. A state may waive *Younger* only by express statement, not through failure to raise the issue. *See Ohio Bureau of Employment Servs. v. Hodory,* 431 U.S. 471, 480, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 573 (1977). Thus, by analogy to *Younger,* it might appear that silence by the state implies nonwaiver of the *Teague* defense.

Rather than pursuing the analogy to *Younger,* however, we follow an analogy that is closer to home: *Granberry v. Greer,* 481 U.S. 129, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987), a unanimous Supreme Court decision which discussed waiver by a state of the nonexhaustion defense in habeas corpus. In *Granberry,* Illinois filed a Fed.R.Civ.P. 12(b)(6) motion in response to Granberry's habeas petition. *Id.* at 130, 107 S.Ct. at 1673. On appeal from the dismissal of the petition, Illinois argued for the first time that Granberry had not exhausted his state remedies; Granberry claimed the issue was waived. *Id.*

The heart of the Supreme Court's opinion considered the history and principles behind the exhaustion requirement: "comity and federalism...." *Id.* at 134, 107 S.Ct. at 1675. Noting the importance of good federal-state relations, the Court nonetheless instructed the circuits to "take a fresh look at the issue" of waiver when the state had failed to raise the exhaustion defense in the district court. *Id.*

For the resolution of this case, *Granberry* provides a better analogue than *Younger.* Like this case, and unlike *Younger,* *Granberry* deals with a waiver by the state of a habeas corpus defense. Further, the *Teague* defense at issue in this case, like the exhaustion defense at issue in *Granberry,* is grounded in concerns for comity and federalism. *Compare Collins v. Youngblood,* 497 U.S. 37, ——, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990) ("the *Teague* rule is grounded in important considerations of federal-state relations") *with Granberry,* 481 U.S. at 134, 107 S.Ct. at 1675 (discussing "the interests of comity and federalism" as the basis for the exhaustion doctrine).

Of course *Granberry* is distinguishable from this case because a habeas petitioner who fails to exhaust his state remedies may return to federal court once he *has* exhausted those remedies. Thus, the issue in *Granberry* was whether to reach the merits of the habeas petition now, or *later.* *See Granberry,* 481 U.S. at 134–35, 107 S.Ct. at 1675–76. The rule is one of timing and therefore controls *when,* not *if,* federal courts will review a state court conviction. Here, the issue is whether to reach the merits now, or *never.* But the reasoning of *Granberry* on the nonexhaustion defense applies fully to the *Teague* defense. *Granberry* is distinguishable, but not in a meaningful way.[1]

---

1. In *Youngblood,* the Court noted the *Teague* rule is not "jurisdictional." *Youngblood,* 110

Following the imperfect analogy to *Granberry*, its approach is instructive here:

> How an appellate court ought to handle a nonexhausted habeas petition when the State has not raised this objection in the district court is a question that might be answered in three different ways. We might treat the State's silence on the matter as a procedural default precluding the State from raising the issue on appeal. At the other extreme, we might treat nonexhaustion as an inflexible bar to consideration of the merits of the petition by the federal court, and therefore require that a petition be dismissed when it appears that there has been a failure to exhaust. Or, third, we might adopt an intermediate approach and direct the courts of appeals to exercise discretion in each case to decide whether the administration of justice would be better served by insisting on exhaustion or by reaching the merits of the petition forthwith.

*Id.* at 131, 107 S.Ct. at 1673 (footnotes omitted).

The same three possibilities apply to a state's failure to raise an objection to a habeas petitioner's reliance on a new Constitutional rule. And here, as in *Granberry*, the Court already has excluded the first two possibilities.

At the first extreme, the state's failure to raise the exhaustion or *Teague* defenses is not a "procedural default" by the state, and does not absolutely bar appellate courts from raising sua sponte those defenses. *Compare Saffle v. Parks*, 494 U.S. 484, 496 n. 1, 110 S.Ct. 1257, 1264 n. 1, 108 L.Ed.2d 415 (1990) (Brennan, J., dissenting) ("Although [this] case was briefed and argued after *Teague*, neither of the parties nor any *amicus* briefed the retroactivity issue") *and Zant v. Moore*, 489 U.S. 836, 837, 109 S.Ct. 1518, 1519, 103 L.Ed.2d 922 (Blackmun, J., dissenting) ("petitioner did not raise retroactivity as a defense to re-

spondent's claim for federal habeas relief, and that defense therefore should be deemed waived") *with Granberry*, 481 U.S. at 133, 107 S.Ct. at 1674 ("The appellate court ... is not obligated to regard the State's [failure to argue nonexhaustion] as an absolute waiver of the claim").

At the other extreme, a petitioner's failure to exhaust state remedies, like a petitioner's reliance on a new Constitutional rule, is not "an inflexible bar to consideration of the merits." *Compare Youngblood*, 110 S.Ct. at 2718 ("Although the *Teague* rule is grounded in important consideration of federal-state relations, we think it is not 'jurisdictional' in the sense that this Court, despite a limited grant of certiorari, *must* raise and decide the issue *sua sponte*") *with Granberry*, 481 U.S. at 131, 107 S.Ct. at 1673 ("We have already decided that the failure to exhaust state remedies does not deprive an appellate court of jurisdiction to consider the merits of a habeas corpus application").

With the two extremes eliminated, *Granberry* articulates a "middle course" for appellate courts confronting a habeas defense raised by the state for the first time on appeal. *Granberry*, 481 U.S. at 133, 107 S.Ct. at 1674. When the state

> fails, whether inadvertently or otherwise, to raise an arguably meritorious nonexhaustion defense[,].... [t]he court should determine whether the interests of comity and federalism will be better served by addressing the merits forthwith....
>
> ....
>
> [I]f a full trial has been held in the district court and it is evident that a miscarriage of justice has occurred, it may ... be appropriate for the court of appeals to hold that the nonexhaustion defense has been waived....

*Id.* at 134–35, 107 S.Ct. at 1675–76.

■ Here too, the "middle course" is the best course: courts of appeals have *discre-*

---

S.Ct. at 2718. As authority for this proposition, the Court provided the following citation: "Cf. *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567 n. 19, 73 L.Ed.2d 172 ... (Eleventh Amendment defense need not be raised and decided by the Court on its own

motion)." *Id.* This might suggest the Court sees the Eleventh Amendment as the best analogy for the resolution of this case. Without more explicit guidance from the Court, however, we will not delve into the Eleventh Amendment when *Granberry* is so close at hand.

*tion,* but are not *required,* to address a *Teague* defense raised for the first time on appeal (or, perhaps, even in a petition for rehearing). As the Court noted in *Granberry,*

> [w]e have also expressed our reluctance to adopt rules that allow a party to withhold raising a defense until after the 'main event'—in this case, the proceeding in the District Court—is over. Although the record indicates that the State's failure to raise the nonexhaustion defense in this case was the result of inadvertence, rather than a matter of tactics, it seems unwise to adopt a rule that would permit, and might even encourage, the State to seek a favorable ruling on the merits in the district court while holding the exhaustion defense in reserve for use on appeal if necessary.

*Granberry,* 481 U.S. at 132, 107 S.Ct. at 1674 (citations and footnote omitted). Substituting *"Teague"* for "exhaustion" and "non-exhaustion" above yields a perfectly tailored argument in favor of allowing a court to find waiver of the *Teague* defense. Indeed, in this case, not only is the "main event" completed, the rematch is finished as well, because we are dealing with a petition for rehearing.

Following *Granberry,* we have discretion to reject the *Teague* defense. The question then becomes: how should we exercise that discretion in this case? In *Granberry,* the Supreme Court advised:

> That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the States, and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution.

*Id.* at 133, 107 S.Ct. at 1674 (quotations omitted); *see Paradis v. Arave,* 954 F.2d 1483, 1488 (9th Cir.1992) (petitioner's "failure to exhaust his remedies is waived"); *Stone v. Godbehere,* 894 F.2d 1131, 1135 (9th Cir.1990) ("Where, as here, the state failed to raise an exhaustion argument be-

fore the district court, we may consider it waived if the interests of comity, federalism and justice would be served."); *cf. Martinez v. Ylst,* 951 F.2d 1153, 1156–57 (9th Cir.1991) (finding waiver by state of argument that petitioner raised nonconstitutional claims on habeas corpus, and citing cases).

We will follow *Stone,* where this court held the exhaustion defense waived because:

> The district court has already held a full trial, and the state has not adequately justified its failure to raise the issue at that time. Moreover, reversal of the district court['s grant of habeas relief] would force Stone to return to prison on a sentence that a federal court has declared unconstitutional. The interests of federalism and comity do not require such an injustice.

*Stone,* 894 F.2d at 1135. As noted above, the reasoning of *Stone* applies with even greater force here because California inexplicably failed to raise the *Teague* defense both in the district court *and* on appeal.

We will not save the state from such a gaffe. The Supreme Court has enforced strict procedural forfeitures on habeas petitioners in the interests of efficient and final adjudication. Why should not the state be similarly held to a pedestrian rule of appellate procedure? Concerns of federalism and respect for a state's criminal judgments are marginal here because the state brought the problem on itself.

In short, *Granberry* provides the best analogy—and consequently the best guidance—for the resolution of this case. *Granberry* held courts of appeal have discretion to find waiver, and on facts analogous to those presented here, this circuit has found waiver. Accordingly, we will not entertain the state's new rule claim.

The state's other arguments lack merit. The petition for rehearing is DENIED.